# FREMONT, E. & M. V. RAILWAY CO. v. PENNINGTON COUNTY, et al.

Grammatical rules of construction are not rules of law, and in the interpretation of statutes must be made subservient to the Legislative intent.

Laws 1899, p. 44, c. 41, § 3, relative to the levy of county taxes, empowers county commissioners to make specified levies at specified rates, and then provides for a levy for the county sinking fund of an amount sufficient to pay one year's interest on the bonded indebtedness, and not to exceed 15 per cent. of the principal, and concludes, in the subdivision which authorizes that levy, with the proviso "that the total county tax rate shall not exceed in any one year the sum of eight mills on the dollar for all purposes." *Held*, that the eight-mill limitation on the county tax rate qualifies the whole section, and limits the county tax rate to eight mills "for all purposes," and does not merely limit the rate of levy for the sinking fund.

Laws 1899, p. 44, c. 41, § 3, which authorizes the county commissioners to levy a six mill tax for general purposes, a two-mill tax for county roads, a two-mill tax for county bridges, a further tax for insane purposes, and a tax for the county sinking fund, and provides that the total county tax rate shall not exceed eight mills on the dollar, is, in view of the fact that it authorizes taxes in excess of the limitation prescribed for the aggregate tax rate for purposes other than the sinking fund, and thus makes it possible for the county to evade the liquidation of and payment of interest on its bonded indebtedness, an unconstitutional impairment of the obligation of contracts.

(*Opinion filed, Dec. 30, 1905.*)

Appeal from Circuit Court, Pennington County. Hon. LEVI McGEE, Judge.

Action by the Fremont, Elkhorn & Missouri Valley Railway Company against the county of Pennington and another. From the judgment rendered, plaintiff appeals. Affirmed.

*Coe I. Crawford,* for appellant. *Buell & Gardner,* for respondents.

HANEY, J. In September, 1899, the commissioners of the defendant county made the following, among other, tax levies: For county general fund, 5 mills; county bridge fund, 1½ mills; support of insane, 2 mills; road fund, certain districts, 2 mills; road fund, other districts, 1 mill; and sinking fund, 9 mills. Claiming these levies exceeded statutory limitations, the plaintiff tendered an amount sufficient to pay all its other taxes and 9 mills on each dol-

lar of its assessed property as county taxes, and instituted this action to restrain the collection of any sum in excess of such tender. During the progress of the litigation the amount tendered was received by the county without waiving its rights to collect the balance claimed to be due, and the only issue is whether any balance remained unpaid. There is no controversy concerning the facts. The court below concluded that the sinking fund levy of 9 mills was void so far as it exceeded the amount necessary to pay annual interest and 15 per cent. on the bonded indebtedness of the county; that 4 1-7 mills was sufficient for the purpose; and that $518.50 of the sinking fund tax should be canceled. The levies for all county purposes, except roads, aggregated 17½ mills. The court below canceled 4 1-7 mills of the sinking fund, leaving the total county tax rate, exclusive of roads, 13 5-14 mills, or 15 5-14 mills in some districts and 14 5-14 mills in others. It was contended by the plaintiff that all in excess of 8 mills should be canceled, and, as this was one mill less than it tendered, it appealed.

So two propositions are involved: (1) Whether chapter 41, p. 44, Laws 1899, limited the levies for all county taxes to 8 mills; and (2) if such was the legislative intent, whether the limitation was constitutional. Chapter 41 was an act "to provide for the levy and limitation of taxes." It contained seven sections. The subheads or marginal notes, as printed in the Session Laws, are the same as in the engrossed and enrolled bill on file with the Secretary of State, and may be considered in construing the enactment. They are as follows: "§ 1. Per Cent.—How Determined. § 2. State Taxes. § 3. County Taxes. § 4. Township Taxes. § 5. School Taxes. § 6. City and Town Taxes. § 7. Repeal." Section 3 provides the time, place, and manner of making the annual levies, and declares: "The board of county commissioners shall have power to make the following levies: (1) For general county purposes, including the support of the poor, such an amount as will necessitate a rate per centum not greater than 6 mills. (2) For insane purposes, such an amount as may be due the state for the support of the insane from their county. (3) For county roads, such an amount as will necessitate a rate per centum not greater than two mills.

Provided, that the county road tax shall not be extended against property included within the limits of any organized township, or of any organized city or town. (4) For county bridges, such an amount as will necessitate a rate per centum not greater than two mills, except in counties where only a part of its territory is organized into civil townhips, the county commissioners shall levy one mill only on organized townships. (5) For county sinking fund, such an amount as will pay one year's interest on the bonded indebtedness of the county, with not to exceed fifteen per cent. of the principal. The money from the sinking fund tax shall be applied to no other purpose than the payment of outstanding bonds and interest on the same until such bonds and interest are fully paid, when any surplus remaining shall be transferred to the county general fund. Provided, that the total county tax rate shall not exceed in any one year the sum of eight mills on the dollar for all purposes." The remaining subdivisions, 6 and 7, are not material to this discussion.

The contention that the proviso at the end of subdivision 5 shall be construed as merely limiting the sinking fund levy to 8 mills, and as not qualifying the whole of section 3, is clearly untenable. In accordance with strict grammatical construction, qualifying words and phrases should be confined to their next antecedent, but rules of construction are not rules of law, and must always be subservient to the legislative intent. Where there is no ambiguity in the language of a statute, there is no room for construction. Did the proviso read thus, "provided that the tax rate shall not exceed in any one year the sum of 8 mills on the dollar," it might be argued that the word "rate" related to the sinking fund alone; but the words "total county taxes for all purposes" cannot be ignored, and, when considered in their ordinary sense and in connection with the entire act, leave no doubt regarding the legislative intent. One purpose of the Legislature was to limit taxation. Section 3 relates to county taxes. In harmony with the general purpose of the enactment, the Legislature declared in plain and unambiguous terms that the total county tax rate for all purposes should not exceed 8 mills on the dollar in any one year, and effect should be

given to the legislative will thus plainly expressed, provided the limitation does not conflict with any principle of constitutional law.

The limitation upon legislative power here involved has been thus defined by the Supreme Court of the United States: "It is true that the power of taxation belongs exclusively to the legislative department, and that the Legislature may at any time restrict or revoke at its pleasure any of the powers of a municipal corporation, including, among others, that of taxation, subject, however, to this qualification, which attends all state legislation, that its action in that respect shall not conflict with the prohibitions of the Constitution of the United States, and, among other things, shall not operate directly upon the contracts of the corporation, so as to impair their obligation by abrogating or lessening the means of their enforcement. Legislation producing this latter result, not indirectly as a consequence of legitimate measures taken, as will sometimes happen, but directly by operating upon those means, is prohibited by the Constitution, and must be disregarded—treated as if never enacted—by all courts recognizing the Constitution as the paramount law of the land. This doctrine has been repeatedly asserted by this court when attempts have been made to limit the power of taxation of a municipal body, upon the faith of which contracts have been made, and by means of which alone they could be performed. So long as the corporation continues in existence, the court has said that the control of the Legislature over the power of taxation delegated to it is restrained to cases where such control does not impair the obligation of contracts made upon a pledge, expressly or impliedly given, that the power should be exercised for their fulfillment. However great the control of the Legislature over the corporation while it is in existence, it must be exercised in subordination to the principle which secures the inviolability of contracts." Wolff v. New Orleans, 103 U. S. 358.

While the doctrine thus announced was invoked for the protection of a bonded indebtedness, and perhaps should not be extended without qualification to cases involving ordinary county warrants, we think it is applicable to the present controversy. The only

change in the law relating to county tax levies effected by chapter 41, p. 44, Laws 1899, material to this discussion, was the provision limiting the total rate to 8 mills. Prior to its enactment the rate for ordinary county revenue, including support of the poor, was not more than six mills; a road tax not exceeding 2 mills; a bridge tax not exceeding 2 mills; and for county sinking fund such rate as in the estimation of the board of county commissioners would pay one year's interest on all the outstanding debts of the county, with 15 per cent. of the principal—outstanding debts being construed to include bonded indebtedness only. C. & N. W. Ry Co. v. Faulk County, 15 S. D. 501, 90 N. W. 149; Comp. Laws 1887, § 1589; Laws 1891, p. 54, c. 14, § 73; Laws 1897, p. 57, c. 28, § 71. Excluding road tax, the total levy in this case for all county purposes was 17½ mills, 9 mills in excess of the limitation prescribed by the law of 1899. After reducing the sinking fund to 4 1-7 mills, there is still an excess of 5 9-14 mills. What shall be done with this excess? Can this court make a new levy by arbitrarily reducing one or more of the other funds, or by further reducing the sinking fund? In absence of evidence to the contrary, it must be presumed that the levy in neither fund exceeds the requirements of such fund. The commissioners, except as to the sinking fund, which has been corrected by the lower court, did not exceed the limit prescribed for any particular fund. Municipal corporations cannot exist without current expenses. Provision for the support of the poor and insane is as imperative and commendable as provisions for payment of bonded indebtedness. The statute authorizes both. Which shall yield when the two together exceed the 8-mill limitation? In this instance the 5 mills general and 2 mills insane fund leave but 1 mill for sinking fund, which is more than 3 mills less than the levy required for that purpose. A levy of 6 mills general and 2 mills insane fund would, if the 8-mill limitation prevails, preclude a sinking fund in any county of the state. In counties having bonded indebtedness, sinking funds cannot be dispensed with, because they were provided for and became a part of the contract when the indebtedness was created.

The Legislature can neither dispense with levies for that pur-

pose, nor authorize county commissioners to do so, without violating the federal Constitution, and that is precisely the practical effect of the legislation under discussion. It attempts to restrict the total county tax rate to 8 mills, and expressly authorizes the commissioners to devote the entire amount to other purposes than a sinking fund. Within the limits prescribed for each fund, the authority of the commissioners is as ample and as far beyond the control of the courts, with respect to general county purposes, support of the poor, and insane, as it is with respect to the sinking fund. There is, therefore, no escape from the conclusion that the proviso in the act of 1899, in its natural and reasonable operation, impairs the obligation of contracts and is unconstitutional. Should this conclusion leave the commissioners with power to make levies for county purposes in excess of what the Legislature deems proper, the evil may be remedied by an act reducing the present levy limit for each fund, other than the sinking fund. The amount of the latter must depend upon the extent of the bonded indebtedness and will regulate itself. As to other funds, the maximum levy allowed by law, with the 8-mill limitation removed, prevailed for many years, and is not unreasonably high. In those funds no more need be levied than is required for each particular purpose, and each county should be trusted to protect itself against unnecessary taxation. So the consequences of this decision are not likely to be either serious or important. It follows that the learned circuit court was right in reducing the sinking fund to the requirements of the bonded indebtedness, and in refusing to further disturb the action of the commissioners.

Its judgment is affirmed.