ROWE, Respondent, v. STANLEY COUNTY et al, Appellants.

(219 N. W. 122.)

(File No. 6641-6651.   Opinion filed April 11, 1928.)

Harry R. Horner, of Pierre, for Appellant.

F. W. Lambert, State's Attorney, of Ft. Pierre, Buell F. Jones, Attorney General, and Benj. D. Mintener, Assistant Attorney General, for Respondents.

Ambrose Tighe, of St. Paul, Minn., and W. W. Soule and Ed L. Grantham, both of Rapid City, amici curiæ.

BROWN, J. This action is brought to restrain the defendant county commissioners from issuing bonds to fund the floating indebtedness of the county, under the provisions of chapter 79 of the Laws of 1927, the County Budget Law. The complaint alleges that the law is unconstitutional in that: First, it embraces more than one subject, viz., the general management of a county's fiscal affairs, the securing of temporary loans by the pledge of delinquent taxes, and the issuing of bonds to pay a county floating indebtedness; second, that the issuing of bonds is not expressed in the title, and that it provides for the payment of county debts not audited or allowed by the county commissioners, which subject is not embraced in the title. The complaint further alleges, if the law is constitutional, defendants have no authority to issue bonds unless 40 per cent of all resident freeholders of the county have petitioned therefor, nor except in connection with and at the time of preparing the provisional county budget in July, 1928.

The defendants demurred to the complaint on the ground that it does not state facts sufficient to constitute a cause of action.

The court sustained the demurrer except as to the allegation that the commissioners intend to issue bonds at their meeting in January, 1928, and to that part of the complaint, the demurrer was overruled on the ground that, under the provisions of the County Budget Law, the commissioners had no authority to issue bonds except at the time of preparing the provisional budget for 1929, between the 1st and 15th days of July.

Plaintiff appeals from that part of the order overruling his demurrer, and defendants appeal from that part sustaining the demurrer as to the time at which the commissioners may issue bonds.

■ The demurrer is single, a unity, and it cannot be sustained in part and overruled in part. Various reasons may be advanced for sustaining or overruling it, and the court may deem some of those reasons well founded and others not, but its decision must either sustain or overrule the demurrer as a whole. The trial court concluded that the claim of unconstitutionality of the Budget Law as a reason for the demurrer could not be sustained, but concluded that under the law the commissioners had no authority to issue bonds prior to their meeting in July, 1928, and for that reason overruled the demurrer. This must be deemed an overruling of the demurrer as a whole. In other words, a holding that the complaint did state facts sufficient to constitute a cause of action because it showed on its face that the defendants proposed to issue bonds in January, while the court held that they had no authority to do so until July. Thus the plaintiff Rowe had nothing to appeal from, and his appeal is dismissed without costs to either party, and defendants will be treated as appellants and plaintiff as respondent in the single appeal from the order of the court considered as overruling the demurrer as a whole.

The title of the act reads as follows:

"An act entitled, an act regulating the fiscal management of, fixing the fiscal year for, and controlling and regulating the raising of revenue and the expenditure thereof during each fiscal year by all counties and their institutions and agencies, and for the approval and adoption of annual budgets of expenditures to be made for all purposes during each fiscal year; providing for temporary loans secured by delinquent taxes and the creation of the delinquent tax fund; prescribing the manner of paying claims filed after the expiration of the fiscal year; providing for the raising of revenue, in addition to budget estimates and appropriations, by taxation; providing for the payment of warrant indebtedness outstanding at the close of the fiscal year ending December 31, 1927."

■ Respondent's brief refers us to 4 Ency. Brit. 750, for an account of the origin and nature of the budget system of financing, and there we find this definition:

"Budget, \* \* \* the name applied to an account of the ways and means by which the income and expenditure for a definite period are to be balanced, generally by a finance minister for his state, or by analogy to smaller bodies."

The budget system is a system "by which income and expenditure for a definite period are to be balanced." It is obvious at once that in South Dakota there can be no county budget law in this sense while there is an outstanding warrant indebtedness, for R. C., § 6973, provides that all county warrants must be paid in the order of their presentation; section 6975 provides that where there are no funds for the payment of such warrants on presentation, the treasurer shall register the warrants, indorsed, "Not paid for want of funds"; and section 6976 provides that all registered warrants shall be paid in the order of their registration. It is thus seen that as soon as the income provided for by the budget comes into the hands of the county treasurer, he must pay it out on the outstanding warrants in the order of their registration, instead of applying it on the expenditures provided in the budget, and so the budget system is at once "knocked into a cocked hat" by the priority of the outstanding warrants. It is thus plain that the budget system in the true sense is unattainable where there is an outstanding floating indebtedness, which, like county warrants under the statutes of this state, must be paid in the order of their presentation. Some provision for doing away with the floating debt is a necessary preliminary to, or part of, a county budget system in South Dakota.

Section 19 of the County Budget Law provides that the floating indebtedness of the county may be taken care of in either of two ways; one by issuing bonds, the other by levying taxes, to raise the money needed to pay such floating debt. Respondent contends that because the title of the act does not specifically mention the "word bond or bonds," the issue of bonds to procure money to pay outstanding warrant indebtedness is unconstitutional as being a subject not expressed in the title of the act. Among other things expressed in the title is provision "for the payment of warrant indebtedness outstanding at the close of the fiscal year ending December 31, 1927." Delivery of money is the mode of ultimate payment. R. C., § 756. Two ways in which governing bodies usually get money are by taxation and by borrowing, and it is

customary to issue bonds for borrowed money. The issuing of bonds to raise money to pay the outstanding warrant indebtedness of a county had been authorized by statute in this state for many years prior to the enactment of the County Budget Law. See R. C., § 6995; Laws 1905, ch. 59; Comp. Laws 1887, § 696. We hold that the clause in the title "providing for the payment of warrant indebtedness" of a county apprises the average man or legislator that the act in all probability provides means of raising the money needed to make payment, either by levying taxes or by bond issue, and that if he perseveres to the end in reading the act he will be enlightened as to details.

██ It is settled by repeated decisions of this court that the title of an act need not include all of its details, and is sufficient if on a fair construction it indicates the purpose of the Legislature, so that making every reasonable intendment in favor of the act, it may be said that the subject of the law is expressed in the title. State v. Morgan, 2 S. D. 32, 48 N. W. 314; State v. Becker, 3 S. D. 20, 51 N. W. 1018. We think the title of the County Budget Law sufficiently complies with this requirement and that no part of the law is unconstitutional on account of either expressing more than one subject, or inadequately expressing that subject in the title of the act.

██ It is next contended that if the law is constitutional, still the defendants have no authority to issue bonds unless 40 per cent of all resident freeholders of the county shall have first petitioned them to do so, as provided in chapter 65 of the Laws of 1927. Chapter 65 was approved February 9, 1927; the Budget Law was approved March 12, 1927. So if the Budget Law conflicts with any provision of chapter 65, the latter is to that extent repealed.

Section 19 of the Budget Law provides that to raise money to pay outstanding warrant indebtedness, the county commissioners may issue funding bonds without "being required to secure the approval of the electors of the county." Chapter 65 (with exceptions not material here) provides that no bonds shall be issued by any county unless 40 per cent of all resident freeholders of the county shall petition the proper officers thereof to issue the same. The provisions of the two laws in this respect seem to conflict, and the County Budget Law, being the later, must prevail.

Respondent argues that dispensing with "approval of the elec-

tors" does not dispense with the necessity of the petition signed by 40 per cent of resident free hold voters; that dispensing with approval of electors clearly means doing away with the necessity of an election on the matter, and nothing else, and that the 40 per cent petition is still indispensable. But approval may be manifested in other ways than by votes cast at an election. A petition asking that a thing be granted is the approval of that thing. Approval means "sanction," and authority to issue bonds without "approval of the electors of the county" means without the sanction of any voter being granted, either by petition or ballot.

■ Section 19 further provides that the validity of outstanding warrants, for payment of which the section provides, shall be "conclusively established by resolution of the governing board," and it is contended that this clause violates the due process of law provision of the Constitution because a taxpayer is thereby deprived of the opportunity to contest the validity of any of such warrants by an action in court.

It is sufficient answer to this contention to observe that although it is alleged in the complaint that there are warrants outstanding in Stanley county to the amount of approximately $180,000, there is no claim that a single one of these warrants is illegal, or that any one will be injured by a resolution of the county commissioners conclusively establishing the validity of these warrants.

■ Constitutional question should not be determined upon suppositious cases. No one can raise the constitutionality of a statute whose interest is not affected by it. State v. Becker, 3 S. D. 29, 51 N. W. 1018. In the absence of any claim that any warrant proposed to be funded by the defendants in this case is invalid, the constitutionality of the clause in question is not before us for consideration.

■ It is finally contended by respondent that the law is incapable of being put into operation in Stanley county because R. C. § 6737 limits the tax levy for all purposes to 7 mills, and at present it is levying 6.95 mills; that to pay off the floating debt by the taxation method by January 1, 1935, as provided in the Budget Law, would require $30,000 additional yearly revenue, and by the bond method, with bond installments maturing from 3 to 20 years from date, $18,000 additional yearly revenue, and that the $5/100$ or $1/20$ of a mill left in the levy limit would produce only

about $500 annually, so that the county is really up against what Napoleon called, "That blockhead of a word, 'impossible'!"

This argument overlooks the decision of this court in Fremont, E. & M. V. R. Co. v. Pennington County, 20 S. D. 270, 105 N. W. 929; Id., 22 S. D. 202, 116 N. W. 75, where it was held that the limit on county tax levy was not and could not be applicable to bond interest and sinking fund.

Appellants contend that the law does not contemplate that bonds cannot be issued prior to July 1, 1928. The statute says that the board at the time of preparing its estimate of revenues and expenditures for the fiscal year commencing January 1, 1929, must determine and adopt the method to be followed in retiring the floating indebtedness, "and must, in such estimate, and in the provisional budget, and in the annual budget," make proper provision for the payment of such floating indebtedness in accordance with the method adopted.

It thus appears that the estimate, the provisional budget, and the annual budget are three separate and distinct things. The provisional budget must be prepared from the estimates and must be filed in the office of the county auditor between the 1st and 15th days of July in each year; but there is no date given when the estimates must be made. Since it is the floating indebtedness which exists at the close of the fiscal year ending December 31, 1927, that may be funded, the estimates cannot be completed before that date.

Section 12 of the act provides that within 15 days after the close of the fiscal year, that is, by January 15th, at the latest the county treasurer must file with the county auditor a report showing the total amount of money received by him from all sources during the fiscal year and coming into each particular fund of the county.

Section 13 provides that not later than June 1st in each year the county auditor shall present to the board a report showing, in substance, a complete and detailed statement of the financial condition of the county for the preceding fiscal year. From these reports the amount of the fundable debt can readily be ascertained and the estimates for the year 1929 made. These estimates should be made before July 1, 1928, because it is on them that the provisional budget, which may be filed on July 1st, is made. How

long before July 1st the estimates may be prepared is not stated in the act, and we see nothing to forbid their being made up any time between January 15th and July 1st in each year, and at the time these estimates are prepared, the commissioners are to determine and adopt the method by which the outstanding warrant indebtedness shall be retired.

We conclude that the County Budget Law does not violate any of the provisions of the Constitution which are invoked against it in this action, and that it does not preclude the issuing of bonds to fund outstanding warrant indebtedness at any time between January 15th and July 1st.

The order appealed from is reversed, and the cause is remanded to the trial court with directions to sustain the demurrer to the complaint as a whole.

BURCH, P. J., and POLLEY and SHERWOOD, JJ., concur.

CAMPBELL, J., dissents.