ELFRING, Appellant v. PATERSON, et al, Respondents

(285 N. W. 443.)

(File No. 8295. Opinion filed April 20, 1939.)

*A. C. Campbell,* of Frederick, and *George H. Fletcher,* of Aberdeen, for Appellant.

*Alan L. Austin* and *Perry F. Loucks,* both of Watertown, for Respondents.

ROBERTS, J. Plaintiff, a resident and taxpayer of Codington County, brought this action to enjoin defendant board of county commissioners, auditor and treasurer, from issuing bonds to fund the floating indebtedness of Codington County.

Defendants answered, admitting that they were negotiating for the sale of bonds in the amount of one hundred thousand dollars to fund the floating indebtedness of the county under the provisions of Chapter 22, Laws 1939. The lower court entered judgmen dismissing the complaint and from this judgment plaintiff has appealed to this court.

The statute involved in the consideration of this case was originally enacted as Section 19 of Chapter 79, Laws 1927, known as the County Budget Law. This Section provided that the floating indebtedness of the county could be retired either by "issuing bonds" or "by levying taxes sufficient to pay such floating indebtedness with interest." This statute read in part as follows:

"The Board of County Commissioners of each county having, at the close of the fiscal year ending *December 31, 1927,* a floating indebtedness consisting of subsisting outstanding warrants drawn against any fund or funds, * * * and being without sufficient money in any such fund or funds with which to pay the same, must provide for the payment of such floating indebtedness, or so much thereof as is in excess of the moneys in such fund or funds applicable to the payment thereof, by one of the two following methods: (a) Funding the same by issuing bonds and selling or exchanging the same * * * (b) by levying taxes sufficient to pay such floating indebtedness with interest thereon; provided, however, that the Board of County Commissioners may levy a tax or taxes during the year commencing *January 1st, 1928,* in an amount sufficient to pay the whole of such floating indebtedness with the interest thereon, or such Board of County Commissioners may levy in each year, during the fiscal year commencing *January 1st, 1928,* a tax or taxes in an amount sufficient to pay at least fifteen per cent (15%) of such floating indebtedness with interest thereon, in each fiscal year, but such taxes must be levied in such amounts as will be sufficient to fully pay the whole of such floating indebtedness with the interest thereon before the 1st day of January, 1935."

Chapter 110, Laws 1931, amended this Section by changing "December 31, 1927" to "December 31, 1930" and "January 1st, 1928" to "January 1, 1931." The italics above indicated where these changes occurred. The statute was similarly amended by Chapter 2, Special Session of 1936, Chapter 77, Laws 1937, and

SDC 12.2017, extending the time within which the floating indebtedness of a county could be funded. Chapter 22, Laws 1939, enacted with an emergency clause provides that the board of county commissioners of each county having "at the close of the fiscal year ending December 31, 1939, a floating indebtedness" may retire the same in the manner provided in the original act. Under the provisions of subdivision (b) boards of county commissioners may levy taxes to pay the floating indebtedness, "commencing January 1, 1939."

Defendants contend that it was plainly the intention of the legislature to authorize a board of county commissioners of a county having "at the close of the fiscal year ending December 31, 1938, a floating indebtedness' 'to fund the same by issuing bonds; that the insertion of "December 31, 1939", in the enrolled bill is a mere clerical or typographical error; and that this error or mistake should not be permitted to defeat the clear intention of the legislature.

An examination of the printed bill certified to by the secretary of the senate and filed in the office of the secretary of state shows that the date "December 31, 1938", was in the bill as introduced and defendants assert that it does not appear from the journals of the senate and house that this date was changed by amendment. It is insisted, however, by plaintiff that the enrolled bill is conclusive evidence as to the correctness of its contents and cannot be impeached by the certified copy of the printed bill and legislative journals, citing Narregang v. Brown County, 14 S. D. 357, 85 N. W. 602; State ex rel. Lavin v. Bacon, 14 S. D. 394, 85 N. W. 605; Krakowski v. Waskey, 33 S. D. 335, 145 N. W. 566; State ex rel. Graber v. Schmidt, 42 S. D. 294, 173 N. W. 951; In re Opinion of the Judges, 43 S. D. 648, 180 N. W. 957.

 In construing statutes the intention of the legislature must be ascertained, if possible, and, when once ascertained, it will be given effect, even though it may be inconsistent with the strict letter of the statute. State ex rel. Cook v. Polley, 30 S. D. 528, 139 N. W. 118. It may be conceded that it is the general rule that courts may not strike out and insert other words or numerals in a statute. The rule, however, is not without well defined exceptions. The scope of judicial interpretation and the caution necessarily exercised in order to carry out the legislative purpose are

clearly stated by the court in Commonwealth v. Barney, 115 Ky. 475, 74 S. W. 181, 184:

"It is for the Legislature to choose its subjects, and its own mode of expression. It is for the court to interpret the language employed so as to carry into effect the legislative purpose, so far as it may not be unquestionably at variance with the Constitution. It may be said that the work of interpretation must be confined to the construction of the words of the act. But that manifestly falls short of the true office of the courts. The Legislature has used certain language to express its purpose. It is the purpose, then, that must be sought for. It will be presumed at the beginning of such an inquiry that the language used will probably best show that purpose. But if it undoubtedly does not, then to stop further inquiry is to probably misapply the legislative will, falling short of its purpose, and, maybe, work a positive and unthought-of public evil. The courts, with due regard to the prerogatives of a co-ordinate branch of government, approach this duty with caution, and with a proper appreciation of the distribution of the powers of the government. But statutes of doubtful meaning must be interpreted, or be subject to final interpretation, in event of controversy as to their true meaning, by the courts established by the organic law for that purpose. The evil to be corrected, the language of the act, including its title, the history of its enactment, and the state of the law already in existence bearing on the subject, are all properly considered by the courts in arriving at the legislative intention, because the Legislature must have resorted to the same means to arrive at its purpose. As, in construing a contract, its context is considered from the standpoint and surroundings of the parties when they made it, so, in construing an ambiguous act of the Legislature, the court will, so far as possible, consider the matters in hand as if situated with respect thereto as that body was. This may result sometimes in the words used in a statute being transposed, or in some of them being omitted or ignored, or in an interpolation of others where necessary to effect the manifest legislative purpose."

██ If the terms of the statute are plain and clear in their meaning, it is the function of the court to give them effect and not to amend the statute to avoid or produce a particular result. Ambiguity is a condition of construction, and may exist where the

literal meaning of a statute leads to an absurd or unreasonable conclusion. Red Wing Sewer Pipe Co. v. City of Pierre, 36 S. D. 276, 154 N. W. 712. We are convinced that under this rule ambiguity exists in the statute before us. This statute as we have stated amends the County Budget Law, Chapter 79, Laws 1927. This Court in Rowe v. Stanley County, 52 S. D. 516, 219 N. W. 122, 123, referring to this statute, said: "It is thus plain that the budget system in the true sense is unattainable where there is an outstanding floating indebtedness, which, like county warrants under the statutes of this state, must be paid in the order of their presentation. Some provision for doing away with the floating debt is a necessary preliminary to, or part of, a county budget system in South Dakota." Under SDC 12.2017, counties would have been authorized on its effective date, July first of the present year, to fund their current floating indebtedness, if. the amendment had not been subsequently enacted. We can perceive no reason for deferring authorization for funding such indebtedness by issuing bonds, and in the same act authorizing the levying of taxes during the present fiscal year to pay a future floating indebtedness. It seems quite evident that there was no purpose in the enactment of this amendment with an emergency clause if we follow the letter of the statute. There would be no purpose merely in permitting the levying of taxes prior to July first. The levy would be extended at the time other levies are extended, and a special levy prior to July first would not expedite the collection of taxes thereunder. Moreover, the amendment provides that the validity of warrants to be funded shall be conclusively established by the resolution of the board of county commissioners. It would not be possible at this time for the purpose of a levy to establish the validity of all warrants outstanding on December 31, 1939, or to determine "the whole of such floating indebtedness".

The history of this legislation throws light upon the intention of the legislature. The preceding amendments of the statute under consideration made provision for funding the floating indebtedness existing at the close of the fiscal year preceding the enactment of the amendment. These amendments made provision for the funding of a current and not a future debt. The date "December 31, 1938", as we have indicated, was in the

printed bill as introduced in the senate. This Court has held that for the purposes of construction of a statute we may examine the official journals of the session. Nash v. Giffen, 61 S. D. 114, 246 N. W. 299. It was pointed out in Ex parte Hoese, 48 S. D. 337, 204 N. W. 174, that we cannot judicially notice the contents of legislative bills as introduced. Conceding that an enrolled bill is conclusive and cannot be impeached by reference to the printed bill in the absence of ambiguity, we are of the opinion that since the enactment of Chapter 142, Laws 1935, providing for the certification and filing of copies of all printed bills we are entitled to notice judicially the contents of a bill properly certified and filed in the office of the secretary of state for the purposes of construction, for the same reasons that we may judicially notice the legislative journals.

■■■ It was the clear intention of the legislature in amending Section 19 of the County Budget Law to authorize counties having at the close of the fiscal year ending December 31, 1938, a floating indebtedness to provide for its payment, and we so construe it. If a clerical error renders a statute incapable of reasonable construction, the proper word or numeral will be deemed substituted, provided it can be supplied by reference to the context, other statutes, or official record of the legislative proceedings. 25 R. C. L. 978. The substitution can be definitely made in the statute before us by reference to such sources, and the letter of the statute be made to yield to the obvious intention of the legislature. No costs to be taxed.

The judgment appealed from is affirmed.

WARREN, P. J., and RUDOLPH and SMITH, JJ., concur. POLLEY, J., absent and not participating.