RYAN et al., Appellants
v.
BOARD OF COUNTY COMMISSIONERS, SULLY COUNTY, Respondents

(175 N.W.2d 902)

(File No. 10657.  Opinion filed March 24, 1970)

Neumayr & Jones, Gettysburg, for appellants.

Francis M. Ryan, Onida, for respondents.

Gallagher & Battey, Redfield, for intervener.

RENTTO, Judge.

This litigation concerns an irrigation district formed pursuant to SDC 61.08 as amended. The provisions thereof concerning the formation of such districts appear now in SDCL 46-12, by which reference they will be cited herein. Appellants attack the legality of the law under which the proceedings were had and alternatively claim that in its establishment the requirements of the statutes were disregarded.

Petitions, admittedly in proper form, were presented to the board of county commissioners of Sully County, South Dakota, on July 6, 1965 seeking the organization of about 58,000 acres of land therein as the Missouri Slope Irrigation District. These the board set down for hearing of which notice was duly given. In answer thereto counter petitions were filed asking that the requested action be denied and the petitions dismissed. In addition some owners of land within the proposed district petitioned that their land be excluded while other owners of land, not in the proposed district, but which they felt were susceptible to irrigation therein, petitioned that their lands be included.

After hearing the various petitions on the day designated and on other days to which the hearing was continued, the board denied the counter petitions. It granted all of the petitions for exclusion and included in the district all of the areas which had requested inclusion except an area of 320 acres which it felt not to be susceptible of irrigation therein. On its own motion it excluded another 320 acres for the same reason.

A resolution adopted by the board on October 6, 1965 reflected these actions and in addition, established and defined the boundaries of the district, gave it the name requested and divided it into three divisions. A second resolution adopted later on the same day fixed the time and procedure for a special election to determine whether the district should be organized. From these resolutions the appellants appealed to the circuit court. They are owners of land within the district and land outside of it over which canals are to be constructed. That court entered an order holding in abeyance the special election at which the matter was to be voted on and, after a hearing, auth-

orized Harold Currier to intervene in this proceeding in the capacities indicated.

The parties presented the matter to the court on a written stipulation of facts which reserved to any of them the right to call witnesses and offer evidence as to any matter not covered by the stipulation. After hearing the cause de novo as provided in SDCL 7-8-30 the court rendered its decision against the appellants and entered a judgment sustaining the action of the board, except that it included in the district lands of two corporate owners which had been excluded therefrom. In addition it directed the board to make provision for an election to determine whether the district should be organized. Execution of the judgment was stayed pending this appeal therefrom.

■ That portion of the act appearing in SDCL 46-12-17 provides that no person shall be entitled to vote at any election held under its provisions unless he shall be a qualified elector as provided in 46-12-2. The later section limits the term "elector" to residents of this state owning not less than ten acres of land in the district. Two of the appellants while being the owners of sufficient land to qualify as electors are not residents of the state. As to them it is urged that the feature of the law denying them the right to vote renders it unconstitutional as depriving them of their property without due process of law.

Our law concerning the formation of irrigation districts, in its basic essentials, was taken from California. Kinney on Irrigation and Water Rights, 2d Ed., § 1405. In the early and now landmark case of Fallbrook Irrigation District v. Bradley, 164 U.S. 112, 17 S.Ct. 56, 41 L.Ed. 369, the claim was made that, in several respects, the California law deprived the landowners in the district of their property without due process of law. In rejecting all of the claims made the court held that the provision for a hearing on the petition before the board of county supervisors, after notice by publication, satisfied the requirements of procedural due process. See also Miller & Lux v. Board of Supervisors, 189 Cal. 254, 208 P. 304. The petition itself does not affect any property rights.

The California law restricted the right to vote at elections under their act to those possessing the qualifications of electors under their general election laws. Such provision limits the ballot to residents of the district. See Art. 2, § 1, West's Annotated California Code—Constitution. The opinion in the Fallbrook case makes no mention of this feature of their act. Apparently it was not urged.

However, in re Bonds of Madera Irrigation District, 92 Cal. 296, 28 P. 272, 14 L.R.A. 755, it is said that denying nonresidents a right to vote at elections under their irrigation law does not make it constitutionally offensive. Such restriction is dictated by the cited constitutional provision. Because of it nonresidents are not allowed to vote in elections which involve the creation of a municipal debt or the adoption of a municipal organization. We have a similar proscription in our constitution. Art. VII, § 1. Accordingly, we hold that the provision of our law denying nonresident landowners the right to vote on the question of organizing the district does not render it unconstitutional.

■ When the petitions were presented to the board of county commissioners they were accompanied with a map of the proposed district showing the location of the proposed canals or works by means of which it was intended to irrigate the land of the proposed district and the other information required under SDCL 46-12-4. A copy of the petitions and all maps and other papers presented were filed with the office of the water resources commission at least four weeks before the date set for hearing the petitions, but none were filed in the office of the state engineer. Appellants claim the law requires these copies to be filed with the state engineer and that the failure to comply with such provision rendered these proceedings void.

Much of our present law concerning the formation of irrigation districts seems to have originated with Ch. 282, Laws of 1917. Section 2 thereof required that the petition and accompanying papers be filed in the office of the state engineer and that he make a report as to the feasibility and practicability of the district. These requirements appear later in Section 8384, Re-

vised Code of 1919 and in SDC 61.0802. They were retained in the amendment made by Section 2, Ch. 417, Laws of 1947. During this period of time the state engineer was required to be a technically qualified and experienced hydraulic engineer and was given general supervision of the waters of the state, their measurement, appropriation and distribution. SDC 55.1801.

By Ch. 430, Laws of 1955, our laws relating to surface waters were extensively amended. This enactment created a water resources commission and authorized it to perform all the duties and carry out all of the functions assigned by law to the state engineer as set forth is SDC 55.1806 through SDC 55.1813, inclusive, including all acts amendatory thereof and those set forth in SDC 61, including all acts amendatory thereof. It also directed the commission to employ a licensed engineer, trained or experienced in hydraulics, who was to be its executive officer and advisor on all matters pertaining to the distribution and conservation of the waters of the state. Manifestly, as a result of this enactment the office of water resources commission became the agency to be furnished copies of the designated papers and the one to make a report on the feasibility and practicability of the district. That SDC 1960 Supp. 61.0802 fails to reflect this change does not affect its validity. Ch. 230, Laws of 1959 authorizing the supplement makes it only prima facie evidence of our statutory laws.

The duties and functions of the state engineer described in SDC 55.1806 through 55.1813, and by the 1955 act assigned to the water resources commission, concerned principally irrigation and matters related thereto. SDC 61 from which other functions of the state engineer were thereby assigned to the commission is the portion of our code designated topically as Waters. Four years later as confirmation of this transfer of duties and functions, Ch. 290, Laws of 1959 deleted the requirement that the state engineer had to be a technically qualified and experienced hydraulic engineer, and Ch. 450 of the same session authorized the commission to collect the fees prescribed in matters relating to the use of waters. Ch. 450 also repealed SDC 55.1806 under which the state engineer had previously performed this function.

The enactment of Ch. 455, Laws of 1963, which is the basis of appellants' claim, created some confusion as to the proper office for the filing in question. By Section 2 thereof the legislature amended the first paragraph of SDC 1960 Supp. 61.0802 making some changes in the requirements concerning the petition by which proceedings to establish irrigation districts are initiated. It also included therein language reinstating the office of the state engineer as the agency in which copies of the petition and other papers were to be filed.

That this was an inadvertence is suggested by the fact that the function of reporting on the feasibility and practicability of the district was not then, nor has it since been reinstated as the duty of the state engineer. It would be an absurd requirement to have the papers filed with the state engineer when the burden of examining them and preparing a report based thereon remained the duty of the water resources commission.

When the 1963 act purporting to reinstate the state engineer as the one with whom the petition and other papers were to be filed was adopted he was not required to be a technically qualified and experienced hydraulic engineer. At that time the officer required to possess these qualifications was the licensed engineer who was the executive officer and advisor of the water resources commission. Moreover, most of the duties of the state engineer concerning irrigation and waters had, before the adoption of that act, been assigned to the water resources commission, including the collection of fees in connection therewith. The totality of these enactments reveals a legislative scheme to take all matters related to surface waters from the state engineer and transfer them to the water resources commission. Significantly, if belatedly, the legislature by Ch. 234, Laws of 1965, completed the endeavor by taking from the state engineer any right to supervise the waters of the state.

In that session there was also enacted a provision substituting the words "Water Resources Commission" for the words "State Engineer", in designated sections of our 1939 Code and its 1960 Supplement. Ch. 302, Laws of 1965. This made men-

tion of SDC 1960 Supp. 61.13, but did not refer to 61.08. However, we do not regard it as being here significant.

In order to carry out what is obviously the legislative intent we hold that the language in Ch. 455, Laws of 1963 purporting to designate the office of the state engineer as the agency where the copies of the petition and other papers were to be filed be disregarded and that the office of the water resources commission be substituted therefor. Elfring v. Paterson, 66 S.D. 458, 285 N.W. 443; Wilcox v. John Morrell & Co., 69 S.D. 488, 12 N.W.2d 15; Sutherland Statutory Construction, 3d Ed., § 4925; 82 C.J.S. Statutes § 325 and 50 Am.Jur., Statutes, § 231. The necessity of this was recognized in the 1967 compilation of our laws. SDCL 46-12-7. Such construction makes the enactments concerning this feature of our irrigation law harmonious.

The investigation of the feasibility and practicability of the proposed district and report thereon required by SDCL 46-12-7 were done and prepared for the commission by J. W. Grimes, its chief engineer and executive officer. The report was presented to the board when the petitions were heard. It appears in this record as appellants' Exhibit No. 2. In it the commission reported that:

> "The Missouri Slope Irrigation District, if created, provides a feasible and practicable organization to provide for delivery of water to the various portions of the lands included in the District which are susceptible of irrigation as part of the Oahe Unit irrigation project as proposed by the United States Bureau of Reclamation."

The commission submitted no finding as to the economic feasibility of the project, but did mention the favorable report of the United States Bureau of Reclamation on this feature.

At the hearing before the court appellants called Mr. Grimes and examined him concerning it. Objection was made and sustained to a question asked concerning the economic feasibility of the project. This ruling was proper. The commission; at this juncture, is charged with investigating the practicability and

feasibility of the irrigation district to accomplish its purpose, but not the economic feasibility of the project that might result therefrom. See SDCL 46-13-3.

██ Appellants complain of not being permitted to examine Mr. Grimes as to the investigation done by him in arriving at the finding of the feasibility. If this was error they were not prejudiced thereby because in answer to a previous question he had given this information. It may well be that the report of the water resources commission is based in part on heresay, but such seems permissible under the statute providing for the investigation and report. It is reasonable to conclude that the legislature intended the report to have evidentiary value.

██ It is urged by appellants that in order to be a feasible and practicable district the lands included therein must be a contiguous area composed of adjacent tracts. The thrust of their argument is that to hold otherwise would permit a gerrymandered district. We find no support for this view in our law. The statutory requirement concerning the location of the land is that it be susceptible of one mode of irrigation from a common source and by the same system of works. Gerrymandering is condemned when indulged in arranging areas of political representation. In the formation of an irrigation district it may be dictated by the topography of the terrain involved.

██ The board may not include in the proposed district any land which in its judgment will not be benefited by irrigation by such systems of works or a portion thereof. SDCL 46-12-12. Appellants seem to suggest that not all of the lands included in the district by the board will be benefited by irrigation. Whether their lands are included in these does not appear, but whatever the situation, there is no evidentiary support in the record for their position.

██ They also complain that the record is devoid of evidence relative to the cost to the landowner of the privilege of irrigation in the proposed district, but they have not directed us to any provision in SDCL 46-12 which requires that. Nor have we found any in our search.

Accordingly, the judgment appealed from is affirmed.

All the Judges concur.

JONES, Circuit Judge, sitting for ROBERTS, P. J., disqualified.