**LEAD–DEADWOOD SCHOOL DISTRICT
NO. 40–1, Plaintiff and Appellant,**

v.

**LAWRENCE COUNTY, and the Lawrence County Commissioners,
Defendants and Appellees.**

**No. 13982–r–JF.**

Supreme Court of South Dakota.

Argued Feb. 16, 1983.

Decided May 18, 1983.

A.P. Fuller of Amundson & Fuller, Lead, for plaintiff and appellant.

Craig D. Grotenhouse of Grotenhouse & Johnson, Spearfish, for defendants and appellees.

FOSHEIM, Chief Justice (on reassignment).

By Act of Congress, Lawrence County and the Lawrence County Commissioners (appellees) receive payment of federal money in lieu of taxes for federal entitlement lands located within Lawrence County. Act of October 20, 1976, Pub.L. No. 94–565, 90 Stat. 2662, 31 U.S.C. § 1601, et seq. These funds "may be used ... for any governmental purpose." 31 U.S.C. § 1601.[1] SDCL 5–11–6 provides that "[t]he county auditor shall distribute federal and state payments in lieu of tax proceeds in the same manner as taxes are distributed." Under the Act, appellees have been the recipients of over $400,000. Under the dis-

---

1. 31 U.S.C. § 1601: That effective for fiscal years beginning on and after October 1, 1976, the Secretary is authorized and directed to make payments on a fiscal year basis to each unit of local government in which entitlement lands (as defined in section 6) are located. Such payments may be used by such unit for any governmental purpose. The amount of such payments shall be computed as provided in section 2.

tribution in lieu of taxes ratio, Lead-Deadwood School District (appellant) would receive in excess of 60% of this payment. However, appellant has not shared in these funds because appellees refuse to honor the distribution provisions of SDCL 5–11–6. Appellant, in this mandamus action, seeks to compel appellees to distribute this money as prescribed by SDCL 5–11–6. Appellees' answer prayed for a denial of the writ, contending SDCL 5–11–6 is unconstitutional. The judgment of the trial court declared that SDCL 5–11–6 "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress under 31 U.S.C. § 1601 and as such [it] is unconstitutional and void under the supremacy clause of the federal and state constitutions."[2] The judgment also declared that appellees could "use all money received under the provisions of 31 U.S. Code § 1601 for any lawful purpose they see fit without regard to the provisions of SDCL 5–11–6." We reverse.

The only issue before us is whether SDCL 5–11–6 conflicts with 31 U.S.C. § 1601, and thus violates the supremacy clause.[3] Our inquiry is based on the assumption that absent the clear and manifest intent of Congress, the reserved powers of the States are not superseded by federal legislation. *Chicago & N.W. Tr. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981); *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978); *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). However we recognized that

> [e]ven if Congress has not completely foreclosed state legislation in a particular

area, a state statute is void to the extent that it actually conflicts with a valid federal statute. A conflict will be found 'where compliance with both federal and state regulations is a physical impossibility . . . ,' or where the state 'law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'

*Ray, supra,* 435 U.S. at 158, 98 S.Ct. at 994 (citations omitted). We must determine what Congress said about the distribution of the money, what South Dakota provides on the subject, and whether there is a conflict. *Chicago & N.W. Tr. Co., supra.*

■ Appellees would have us launch this inquiry with an examination of the legislative history of the Act. However resort to legislative history is justified only when legislation is ambiguous or its literal meaning is absurd or unreasonable. Absent these circumstances we must give legislation its plain meaning. We cannot amend it to produce or avoid a particular result. *Matter of Sales Tax Refund Applications,* 298 N.W.2d 799 (S.D.1980); *Elfring v. Paterson,* 66 S.D. 458, 285 N.W. 443 (1939). In our view, the scriveners of 31 U.S.C. § 1601 wrote it in plain, clear and rational language. We therefore need not look to legislative history. By the plain words of 31 U.S.C. § 1601, the federal money distributed to appellees "may be used by such unit for any governmental purpose." SDCL 5–11–6 requires distribution of these federal payments as taxes are distributed and thus school districts are recipients. Support of school districts is a governmental purpose. Appellees receive the federal money in lieu of taxes that the entitlement land would be

---

**2.** U.S. Const. art. VI, cl. 2: This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

S.D. Const. art. VI, § 26: All political power is inherent in the people, and all free government is founded on their authority, and is instituted for their equal protection and benefit, and they

have the right in lawful and constituted methods to alter or reform their forms of government in such manner as they may think proper. And the state of South Dakota is an inseparable part of the American Union and the Constitution of the United States is the supreme law of the land.

**3.** In *Lawrence County, S.D. v. State of S.D.,* 668 F.2d 27 (1982), the United States Court of Appeals for the Eighth Circuit held that the facts in this case did not present a question of federal court jurisdiction.

subject to if it were not owned by the federal government. One such tax is a school tax. We find no conflict between the two laws. If Congress intended to prohibit § 1601 funds from going to school districts, it could have done so by writing that prohibition into § 1601. However the only restriction placed on these funds is that they be used for a governmental purpose, which it is under SDCL 5–11–6.

Appellees argue conversely that had Congress intended § 1601 money to go to school districts, it would have so specified, as it did in 31 U.S.C. § 1603. We are not persuaded by this argument. Section 1603 is a special part of the Act which provides for *additional* payments to counties to compensate them for loss of real property taxes on certain lands acquired by the federal government after December 31, 1970. Payment under this section continues for only five years. This is a special measure to relieve the impact on local governments' budgets when land is suddenly removed from their tax roles. Payment under this program is based on one percent of the fair market value and is paid to counties with direction that the money be prorated to local units of government and school districts. While the payment would not necessarily provide dollar for dollar tax equivalency, it provides a measure of temporary revenue relief while these localities adjust to the tax loss. We do not believe that by earmarking school districts as recipients of § 1603 funds Congress thereby manifested its intent to exclude them from § 1601 funds. We reiterate the assumption that Congress does not intend to supersede state legislation absent a clear manifestation of such an intention.

We conclude that it is feasible for appellees to comply with 31 U.S.C. § 1601 and SDCL 5–11–6 because SDCL 5–11–6 is in harmony with, and not an obstacle to, the fulfillment of 31 U.S.C. § 1601.

---

* Section 1603 discusses payments for certain lands and provides for proportional payments of the funds to local governments and affected school districts. Section 1603 of the Act provides, in pertinent part:

The counties, under guidelines established by the Secretary, shall distribute the payments

The judgment is reversed with direction to issue the writ of mandamus.

WOLLMAN and MORGAN, JJ., concur.

DUNN and HENDERSON, JJ., dissent.

DUNN, Justice (dissenting).

I would first define the exact issue before this court. Section 1601 funds can be distributed "for any governmental purpose" by the local taxing authority (county) receiving the money. Financing school districts is a governmental purpose and the county could allot part or all of the section 1601 funds to the school district under the Act. The question presented here is: Can the county be *mandated* to pay over sixty percent of section 1601 funds to the school districts by a *state statute?*

Section 1601 provides that the money be paid over to the local taxing authority to be used "for any governmental purpose." Unlike section 1603 of this Act,* section 1601 does not provide for the distribution of these funds for school districts. At the very least, the silence in section 1601 on this point, in contrast to section 1603 express provision, creates an ambiguity as to how section 1601 funds are to be distributed. When we turn to the legislative history of the Act, it becomes most apparent that section 1601 funds were not intended to be earmarked by the State or any other unit of government except the *local taxing authority (county)* receiving the money.

The Senate Report on the Act states: [T]he Committee believes that payments under [the Act] should go directly to units of local government since the local governments are the entities which assume the burden for the tax immunity of these funds. The Committee does not believe that these new payments should be *restricted or earmarked for use for*

on a proportional basis to those units of local government and affected school districts which have incurred losses of real property taxes due to the acquisition of lands or interests therein for addition to either such system.

*specific purposes* and the bill allows these payments to be used for any governmental purpose. S.Rep. No. 1262, 94th Cong., 2d Sess. 15 (1976), U.S.Code Cong. & Admin.News 1976, p. 5968, 5978. (Emphasis supplied.)

Later in the report the Committee was even more explicit as to the State's interference in distributing the funds:

> Many of the revenue sharing provisions permit the States to make decisions on how the funds will be distributed. In far too many States, the result has been that the funds are either kept at the State level and not distributed to local governments at all or are parcelled out in a manner which provides shares to local governments other than those in which the Federal lands are situated and where the impacts of the revenue and fee generating activities are felt. S.Rep. No. 1262, 94th Cong., 2d Sess. 9 (1976), U.S.Code Cong. & Admin.News 1976, p. 5972.

This statement makes it abundantly clear that Congress was directing the states to keep their noses out of the manner in which a county would distribute these funds. I believe Congress intended the county be vested with total discretion in distributing section 1601 funds. While the county may choose to distribute part of the section 1601 funds to the school district, *see Kendall v. Towns County,* 146 Ga.App. 760, 247 S.E.2d 577 (1978), I do not believe the county can be forced to do so as contemplated by SDCL 5–11–6. By the passage of SDCL 5–11–6, South Dakota was undermining the very intent and purpose of the Act by earmarking sixty percent of the funds for school districts.

The United States Supreme Court noted in *Chicago & N.W. Tr. Co. v. Kalo Brick and Tile Co.,* 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258, 265 (1981):

> [W]hen Congress has chosen to legislate pursuant to its constitutional powers, then a court must find local law preempted by federal regulation whenever the "challenged state statute 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' "

Since SDCL 5–11–6 undermined the accomplishment and execution of the full purposes and objectives of Congress by earmarking funds for school districts, I would find SDCL 5–11–6 unconstitutional as far as section 1601 payments are concerned. I would affirm.

I am authorized to state that Justice HENDERSON joins in this dissent.