**In the Matter of DAHME CONSTRUCTION COMPANY, INC., Plaintiff and Appellant,**

v.

**WEB WATER DEVELOPMENT ASSOCIATION, INC., Defendant and Appellee.**

**No. 16155.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 12, 1989.

Decided April 12, 1989.

Lonald L. Gellhaus of Williams & Gellhaus Aberdeen, for plaintiff and appellant.

Jack R. Von Wald of Von Wald Law Offices, Selby, for defendant and appellee.

WUEST, Chief Justice.

Dahme Construction Company, Inc. (Dahme), a South Dakota corporation, appeals a trial court order granting summary judgment in favor of WEB Water Development Association, Inc. (WEB).[1] We affirm the decision of the trial court.

WEB is a nonprofit corporation organized and existing under the laws of this state.[2] The corporation operates a rural water system in north central and northeastern South Dakota. The system draws water from the Missouri River and transports it via main and secondary pipelines to customers in nine counties. The project, which is now ninety percent complete, will ultimately serve 4100 rural families and fifty municipalities.

WEB was incorporated in 1978. As a nonprofit corporation, WEB invited individuals, municipalities and other rural water associations to become members in the corporation in lieu of issuing shares of stock. Applications for membership had to be approved by the board of directors. Not everyone residing in the area serviced by WEB became a member. Only members of the corporation, upon payment of a membership fee, may purchase water from WEB.

The cost of completing the WEB project is approximately $117,500,000. Most of the construction funds for the project are provided by the United States Department of the Interior, Bureau of Reclamation (Bureau). According to an agreement signed by WEB and the Bureau on September 29, 1983, seventy-five percent of the construction funds provided by the Bureau was in the form of grants. The remaining twenty-five percent was in the form of loans. At the time of the hearing on WEB's motion for summary judgment, WEB had received approximately $70,000,000 from the Bureau.

WEB also receives money from the Oahe Conservancy Sub–District. This entity was established in 1960 to enhance water development in north central South Dakota. On July 6, 1979, the Sub–District agreed to provide $3,100,000 to WEB over a ten-year period ending in 1990. These funds, the purpose of which was to entice federal financial assistance, were to be raised from a mill levy on real property located in the area serviced by WEB. At the time of the summary judgment hearing in this matter, WEB had received $1,750,000 from the Sub–District.[3]

---

1. The term "WEB" is an acronym for Walworth, Edmunds and Brown counties.

2. The statutory provisions regarding nonprofit corporations are SDCL ch. 47–22 to SDCL ch. 47–28, inclusive.

3. The Oahe Conservancy Sub–District, as an en-

During 1987, WEB solicited bids for the construction of a main transmission pipeline (Contract 4–1C). Dahme responded with a bid in the amount of $2,130,523. A Wyoming construction company, Larry's, Inc. (Larry's), also submitted a bid to WEB. Larry's bid was $2,100,752.80. Because Larry's bid was lower than that of Dahme, WEB awarded Contract 4–1C to Larry's on January 21, 1988.

On January 26, 1988, Dahme filed suit against WEB, seeking enforcement of South Dakota's preference in public contracts law and cancellation of the contract between WEB and Larry's. Dahme claimed that it should have been awarded Contract 4–1C, even though its bid was higher than Larry's, because it was the preferred bidder under SDCL 5–19–3, which provides:

> When a contract is let by the state, a department thereof, any county, city, town, school district or other public corporation of the state for the erection, construction, alteration or repair of any public building, other structure or addition thereto, or for any public work or improvement or for the purchase of any goods, merchandise, supplies or equipment of any character, the contract shall be let to the lowest responsible bidder. However, a resident bidder shall be allowed a preference on a contract against the bid of any bidder from any other state which enforces or has a preference for resident bidders. The amount of the preference given to the resident bidder shall be equal to the preference in the other state.

Wyoming, the state in which Larry's is incorporated, has a similar statute. Under Wyo.Stat.Ann. § 16–6–102(a), "the state, any department thereof, or any county, city, town, school district, community college district or other public corporation" shall award a contract to "the responsible

certified resident making the lowest bid if the certified resident's bid is not more than five percent (5%) higher than that of the lowest responsible nonresident bidder."

The difference between Dahme's and Larry's bids was $29,770.20. Because its bid was only one and one-half percent higher than Larry's, Dahme claimed that SDCL 5–19–3 required WEB to award Contract 4–1C to it instead of Larry's.

WEB subsequently brought a motion for summary judgment pursuant to SDCL 15–6–56(b), asserting that Dahme had demonstrated no genuine issue of material fact. The trial court granted WEB's motion, reasoning that because the bulk of the funds for the project come from a federal agency, WEB was obligated to comply with federal procurement standards. These standards required that contracts be awarded to the bidder whose bid was "most advantageous to the recipient, price and other factors considered." The trial court concluded that the provisions in WEB's agreement with the Bureau and the procurement standards conflicted with SDCL 5–19–3. Therefore, under SDCL 5–19–7,[4] said contract provisions and federal procurement standards would prevail over the preference stated in SDCL 5–19–3.

The only question presented to us by this appeal is whether the trial court erred in granting summary judgment in favor of WEB. In reviewing a trial court order granting summary judgment, we must determine whether the moving party demonstrated the absence of any genuine issue of material ﹀fact and showed entitlement to judgment on the merits as a matter of law. *Groseth Intern., Inc. v. Tenneco, Inc.*, 410 N.W.2d 159, 164 (S.D.1987). The evidence must be viewed most favorably to the non-moving party and reasonable doubts should be resolved against the moving party. *Dahl v. Sittner*, 429 N.W.2d 458, 461 (S.D.

---

tity, no longer exists and currently is under the administration of the South Dakota Department of Water and Natural Resources.

**4.** SDCL 5–19–7 provides:
The operation of this chapter upon the letting of any public works contract above mentioned, in connection with which funds are

granted or advanced by the United States of America, shall be subject to the effect if any, of related laws of said United States and valid rules and regulations of federal agencies in charge, governing use and payment of such federal funds.

1988); *Wilson v. Great Northern Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968). The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. *Ruane v. Murray*, 380 N.W.2d 362, 364 (S.D.1986). Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper. *Ruple v. Weinaug*, 328 N.W.2d 857, 859–60 (S.D.1983). We believe that summary judgment was appropriate in the present case and that the trial court could have based its decision on either of two grounds.

■ First, the clear language of SDCL 5–19–3, insofar as it regards corporations, refers only to those that are *public.* SDCL 5–19–3 has no application to actions taken by *private* corporations. We note that WEB's articles of incorporation state that it is a nonprofit corporation in accordance with the provisions of SDCL ch. 47–22 to SDCL ch. 47–28, inclusive. SDCL title 47 governs private corporations organized under the laws of this state. *See* SDCL 47–1–1. Our inquiry, however, does not end here. The test used to determine the classification of a corporation as being either public or private has been stated as follows:

> The legal test between a private and a public corporation is whether the corporation is subject to control by public authority, state or municipal. To make the corporation a public one, its managers, whether trustees or directors, must be not only appointed by public authority but [also] subject to its control.

*Kerr v. Enoch Pratt Free Library*, 54 F.Supp. 514, 523 (D.Md.1944), *rev'd on other grounds*, 149 F.2d 212 (4th Cir.1945), *cert. denied*, 326 U.S. 721, 66 S.Ct. 26, 90 L.Ed. 427 (1945). *See also Jensen v. Juul*, 66 S.D. 1, 278 N.W. 6 (1938).

We believe that WEB is a private corporation. Although it is engaged in constructing a public work and receives substantial amounts of public funding, these factors are not sufficient to classify WEB as a public corporation. *See Wright v. No Skiter, Inc.*, 774 F.2d 422 (10th Cir.1985). The above-stated test requires certain elements of governmental regulation or control, which do not exist in the present case. WEB's board of directors is duly elected by the corporation's members. With the exception of its obligation to follow federal procurement standards, the board of directors is relatively free of governmental control. Because WEB does not fall within the definition of a public corporation, it was not required to heed SDCL 5–19–3.

■ Even if WEB were to be classified as a public corporation, summary judgment would have been appropriate on the basis upon which the trial court relied. As previously noted, the bulk of the construction funds for the rural water system is provided by the Bureau. The agreement signed by WEB and the Bureau states, in regard to competitive bidding:

> WEB shall advertise each construction, equipment or supply contract exceeding $10,000 for competitive bidding. Upon receipt of bids, any action proposed by the WEB other than making the award to the lowest responsible bidder shall be subject to review by the Contracting Officer. The provision of OMB circular A–110, Attachment O, attached hereto as part of Exhibit C, shall be followed.

Attachment O to OMB circular A–110 sets forth the procurement standard to be used by the recipient of federal monies. Attachment O provides, in pertinent part:

> All procurement transactions shall be conducted in a manner to provide, to the maximum extent practical, open and free competition. The recipient should be alert to organizational conflicts of interest or noncompetitive practices among contractors that may restrict or eliminate competition or otherwise restrain trade. In order to ensure objective contractor performance and eliminate unfair competitive advantage, contractors that develop or draft specifications, requirements, statements of work, invitations for bids and/or requests for proposals should be excluded from competing for such procurements. Awards shall be

made to the bidder/offer or whose bid/offer is responsive to the solicitation and is most advantageous to the recipient, price and other factors considered. Solicitations shall clearly set forth all requirements [5] that the bidder/offerer must fulfill in order for his bid/offer to be evaluated by the recipient. Any and all bids/offers may be rejected when it is in the recipient's interest to do so.

Dahme argues that the preference stated in SDCL 5–19–3 is one of the "other factors" to be considered by WEB in awarding contracts to bidders. We find Dahme's contention faulty. By focusing on the "other factors" language contained in the above paragraph, Dahme overlooks that language which addresses "open and free competition," eliminating "unfair competitive advantage," and offers which are "most advantageous to the recipient." This language in Attachment O indicates to this court the intent of the Bureau that preferences, such as the one stated in SDCL 5–19–3, not be considered in awarding contracts which are fully or partially paid with federal monies. We therefore hold that the statutory language in SDCL 5–19–3 contravenes the procurement standard in Attachment O to OMB circular A–110. The terms of circular A–110, as incorporated in the agreement between WEB and the Bureau, must prevail over the preference stated in SDCL 5–19–3. *See* SDCL 5–19–7.

For the above-stated reasons, summary judgment was appropriately granted in favor of WEB. The decision of the trial court is affirmed.

MORGAN, SABERS and MILLER, JJ., concur.

HENDERSON, J., concurs in result.

HENDERSON, Justice (concurring in result).

Although I do not agree that Web is a private corporation, I do agree that summary judgment was properly granted (as a matter of law). With federal dollars, federally funded contracts and federal procurement regulations, we have before us a classic example of agreements between Web and the Bureau of Reclamation having preference over SDCL 5–19–3. Federal regulations control. In essence, they require that Web employ competition. In *Lawrence County v. Lead–Deadwood School Dist., No. 40–1*, 469 U.S. 256, 105 S.Ct. 695, 83 L.Ed.2d 635 (1985), the United States Supreme Court held that a South Dakota statute, SDCL 5–11–6, conflicted with a federal statute, 31 U.S.C. § 1601, and that the federal law was controlling. That opinion, which reversed this Court's holding in *Lead–Deadwood School District v. Lawrence County*, 334 N.W.2d 24 (S.D. 1983), thereby vindicating the dissenting view of former Chief Justice Dunn, joined by this special writer, was a forerunner of the present case.

Web is a total creature of government, funded by tens of millions of the taxpayers' dollars funneled into the United States Treasury. Without the support of these millions of dollars, Web would not be created nor could it thereafter exist. It is a totally public corporation existing to spread water on the dry plains for the benefit of South Dakota citizens.[*] It is a "public work," to the thinking of this special writer and, in so expressing, it is the objects to be accomplished which govern. 64 Am.Jur.2d *Public Works and Contracts* § 1 (1972). Here, Web awarded the contract to the lowest bidder, which it obviously believed was responsible. Surely, the board of di-

---

**5.** The preference stated in SDCL 5–19–3 should have been set forth in the bid requirements for it to be binding on Larry's. Otherwise, WEB may have been liable to Larry's.

[*] A system has been federally funded to operate a rural water system covering a nine-county area with main and secondary water lines. These lines originate at the Missouri River and run eastward. Approximately fifty municipalities and 4,100 rural families will be served by this water. A "public work" includes "any work in which the United States is interested and which is done for the public and for which the United States is authorized to expend funds." United States for the use of *Motta v. Able Bituminous Contractors, Inc.*, 640 F.Supp. 69, 71 (D.Mass. 1986) (citing *Peterson v. United States for use of Marsh Lumber Co.*, 119 F.2d 145, 147 (6th Cir. 1941)).

rectors checked over these bidders and their qualifications. Web, through its board of directors, exercised its determination that such an award was advantageous. Thus, I concur in result.