Willis J. NELSON, Jr., Plaintiff
and Appellant,

v.

WEB WATER DEVELOPMENT ASSOCI-
ATION, INC., Edwin Fischbach, Robert
Knickrehm, William D. Johnson, Oscar
E. Jeschke and Howard Thomas, Defen-
dants and Appellees.

No. 17966.

Supreme Court of South Dakota.

Argued Jan. 13, 1993.

Decided Oct. 27, 1993.

Charles B. Kornmann and Susan Margolies, Richardson, Groseclose, Kornmann and Wyly, Aberdeen, for plaintiff and appellant.

Lawrence L. Piersol and Marie E. Hovland, Davenport, Evans, Hurwitz and Smith, Sioux Falls, for defendants and appellees.

WUEST, Justice.

Willis J. Nelson (Nelson) appeals from a decision granting summary judgment to WEB Water Development Association (WEB). We affirm in part, reverse in part and remand.

## FACTS

Nelson was hired as manager of WEB, a non-profit corporation for water development, in March 1988. In August 1989, WEB and Nelson signed an employment contract in which WEB agreed to employ Nelson for three years. On December 9, 1989, new members of the WEB Board of Directors (Board) were elected, three of whom had campaigned that a change of management was needed at WEB. On January 17, 1990, without full Board authorization, a settlement was offered to Nelson if he would resign as WEB manager. He refused.

At a public WEB meeting on January 17, 1990, a motion was made to fire Nelson. Nelson's job performance was then discussed; the motion carried and he was fired that day.

Nelson filed suit against WEB and the directors as individuals alleging breach of contract, conversion of salary, defamation, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, negligent or intentional infliction of emotional distress, conspiracy to breach the contract, interference with business relationship or expectancy, and requesting punitive damages. WEB was granted summary judgment; Nelson appeals.

■ Subsequent to the oral arguments before this court, a motion was made by Nelson to take judicial notice of article X of WEB's articles of incorporation. Apparently, the trial court and lawyers were previously unaware of article X. We find that this court's judicial notice of the article is proper. *Nauman v. Nauman,* 336 N.W.2d 662 (S.D.1983). In *Nauman,* we stated:

> By both statute, SDCL 19–10–2(2) and 19–10–3, and case law, even though it be a fact of which the court does not possess actual present knowledge, *State v. Larson,* 81 S.D. 540, 138 N.W.2d 1 (1965), judicial notice may be taken of public or official records. *Walz v. City of Hudson,* 327 N.W.2d 120 (S.D.1982); *Elfring v. Paterson,* 66 S.D. 458, 285 N.W. 443 (1939). . . . It would be an idle act to remand the proceedings to find what we know, and can accept, as factual.

*Nauman,* 336 N.W.2d at 664–65. This authority allows judicial notice of the WEB articles of incorporation filed with the Secretary of State for the State of South Dakota.

## STANDARD OF REVIEW

■ In reviewing a grant of summary judgment under SDCL 15–6–56(c) we must determine whether the moving party has demonstrated there is no genuine issue of material fact and he is entitled to judgment as a matter of law. *Wilson v. Great Northern Ry. Co.,* 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968); *Groseth Int'l, Inc. v. Tenneco, Inc.,* 410 N.W.2d 159, 164 (S.D.1987); *Breen*

*v. Dakota Gear & Joint Co.,* 433 N.W.2d 221, 223 (S.D.1988). "The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party." *Groseth,* 410 N.W.2d at 164 (citing *Wilson,* 157 N.W.2d at 21; *Trapp v. Madera Pac., Inc.,* 390 N.W.2d 558 (S.D.1986)). Affirmance is proper if any basis exists which would support the trial court's ruling. *Breen,* 433 N.W.2d at 223 (citing *Blote v. First Fed. Sav. & Loan Ass'n,* 422 N.W.2d 834, 837 (S.D.1988); *Uken v. Sloat,* 296 N.W.2d 540, 542 (S.D.1980)).

## ANALYSIS

### I. VALIDITY OF EMPLOYMENT CONTRACT BETWEEN WEB AND NELSON.

■ The WEB bylaws provide the Board of Directors with the authority to discharge an employee at the pleasure of the Board. WEB asserts that its otherwise valid contract with Nelson was void because it was beyond the power of the Board as expressed in the bylaws of the corporation to enter a valid employment contract for a specified term. Nelson claims that because South Dakota law gives corporations the power to enter into contracts, the Board possessed the authority to enter valid employment contracts independent from its authority to terminate employment and thus, his contract is valid.

The bylaws of the WEB Corporation provide in part:

### ARTICLE XIII

Section 1. The Board of Directors subject to the restrictions of the law, the Articles of Incorporation, and By–Laws, shall exercise all of the powers of the Corporation. *Without prejudice to, or limitation upon, their general powers,* it is hereby expressly provided that the Board shall have, and are given, full power and authority to perform the duties and functions hereinafter set forth, to wit: [Emphasis added.]

\* \* \* \* \* \*

b. To select and appoint all officers, agents, or employees of the Corporation *or remove all such agents or employees of the Corporation, at the pleasure of the Board,* and to prescribe such duties and designate such powers as may be consistent with these By–Laws, and fix their compensation and pay for faithful services. [Emphasis added.]

### ARTICLE XVI

[T]hese By–Laws may be altered, amended or repealed by a majority of the members at any regular or special meeting, provided the notice of such meeting shall have contained a copy of the proposed alternation, amendment or repeal.... Changes in the By–Laws may be proposed by the Board of Directors subject to review and approval of the membership at any annual or special meeting. Proposed changes by the Board of Directors must be included in the notice of the meeting.

The circuit court held there was no enforceable contract between Nelson and WEB because entering into a contract for a specified term was an amendment of the bylaws by the Board.

SDCL 47–22–33 provides, in part:

The power to alter, amend or repeal the bylaws or adopt new bylaws shall be vested in the board of directors unless otherwise provided in the articles of incorporation or the bylaws. The bylaws may contain any provisions for the regulation and management of the affairs of a corporation not inconsistent with law or the articles of incorporation.

Unfortunately, the trial court and parties were laboring without the benefit of article X of the articles of incorporation. As shall be seen, there is an apparent conflict between article XVI of the WEB bylaws and article X of the articles of incorporation. The bylaw provision of article XVI to the effect that the members may alter or amend the bylaws is clearly in disaccord with article X of the articles of incorporation which provides that the Board of Directors "shall be empowered to amend or repeal the By–Laws, from time to time, by means of a 66% favorable vote, after proper notice to Directors." SDCL 47–

22–34 provides, in part: "In all other cases, whenever a provision of the articles of incorporation is inconsistent with a bylaw, the provision of the articles of incorporation shall be controlling."

In WEB's brief, it was conceded that authorities relied upon by Nelson stand for the proposition that a bylaw empowering the board of directors to remove a director or officer of the corporation does not authorize the board to terminate a contract with one whom they had employed for a definite term. *See Short v. Columbus Rubber & Gasket Co.,* 535 So.2d 61, 65–66 (Miss.1988); *Cuppy v. Stollwerck Bros.,* 216 N.Y. 591, 111 N.E. 249, 251 (1916); *United Producers and Consumers Coop. v. Held,* 225 F.2d 615, 618 (9th Cir.1955); *In re Paramount Publix Corp.,* 90 F.2d 441, 443 (2d Cir.1937). This is especially true in a situation like the present case, where a board of directors has the power to amend the bylaws of the corporation. WEB's brief provides authority holding that where a corporation's board of directors have the express authority to amend the bylaws, a contract for a term of employment is valid and enforceable. *See, e.g., Hernandez v. Banco de las Americas,* 116 Ariz. 552, 570 P.2d 494, 498 (1977); *Dixie Glass Co. v. Pollak,* 341 S.W.2d 530, 535 (Tex.Civ.App. 1960); *Realty Acceptance Corp. v. Montgomery,* 51 F.2d 636, 637–38 (3d Cir.1930); *Magnus v. Magnus Organ Corp.,* 71 N.J.Super. 363, 177 A.2d 55, 58 (Ch.Div.1962). As stated in WEB's brief, "[t]hese cases clearly show that, regardless of whether an employment contract is written or oral, a contract of employment for a specified period could operate as an amendment or rescission of a bylaw authorizing the removal of an officer or employee at the pleasure of the board *if* such contract was made by a board of directors having power to amend or rescind the bylaws of the corporation[.]" This power to amend the bylaws is granted to the WEB Board in article X of the WEB articles of incorporation. Thus, the WEB Board of Directors had the authority to enter into a valid employment contract for a specified term.

Under SDCL 47–22–2, all of chapters 47–22 through 47–28 apply to nonprofit corporations organized in South Dakota. WEB is a nonprofit corporation chartered under South Dakota law. SDCL 47–22–59 provides:

Each *corporation shall have power to make contracts* and incur liabilities, borrow money at such rates of interest as the corporation may determine, issue its notes, bonds, and other obligations, and secure any of its obligations by mortgage or pledge of all or any of its property, franchises and income. [Emphasis added.]

SDCL 47–22–59 clearly provides that WEB had the authority to enter into valid contracts. The authority to enter into valid contracts includes the power to enter employment contracts.

Since a corporation can act only through individuals acting as agents for the corporation, it follows that the corporation may employ officers and agents to act for it.... The board of directors as the ultimate governing body of the corporation has the authority to make employment contracts of all kinds or to ratify such contracts made by others.

19 William M. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 3:38 (perm. ed. rev. vol. 1988). Article XIII of the WEB bylaws authorized the Board to exercise the powers of the corporation.

Further, SDCL 47–23–25 provides:

Any officer or agent elected or appointed may be removed by the persons authorized to elect or appoint such officer whenever in their judgment the best interests of the corporation will be served thereby. *The removal of an officer or agent shall be without prejudice to the contract rights, if any, of the officer so removed.* Election or appointment of an officer or agent shall not of itself create contract rights. [Emphasis added.]

The language of this statute is clear—a nonprofit corporation may remove an officer or director at the pleasure of the board, but the removal of such officer or director may not prejudice any existing contract rights. The legislature's adoption of this statute is consistent with the view that employment contracts are designed to benefit both the corporation and the employee. *See Paramount,* 90 F.2d at 443 (stating that to allow either corporation or employee to ignore employment con-

tracts would be disruptive of modern business practice). Likewise, the Arizona Supreme Court found that state's enactment of a statute similar to SDCL 47–23–25 was an adoption of the idea "that modern business mandates that parties must be bound by the contracts they enter into absent fraud or duress." *Hernandez*, 570 P.2d at 498. WEB's discharge of Nelson as WEB manager did not affect his rights under a valid employment contract.[1] We reverse the trial court on this issue.

## II. EFFECT OF WEB EMPLOYEE PERSONNEL MANUAL.

■ Nelson claims the WEB employee handbook created a contract to discharge for cause only. WEB claims the handbook did not apply to Nelson as a manager and further, that the book was neither detailed nor specific enough to create a contract.

South Dakota law provides that employment having no specified term may be terminated at the will of either party. SDCL 60–4–4. We have carved out two exceptions to this employment-at-will doctrine in cases where implied contracts arise through the use of employee handbooks. *Osterkamp v. Alkota Mfg., Inc.*, 332 N.W.2d 275 (S.D.1983). The two exceptions have been clearly defined by this court:

> First, such an agreement may be found where the handbook explicitly provides, in the same or comparable language, that discharge can occur "for cause only."

> Second, a "for cause only" agreement may be implied where the handbook contains a detailed list of exclusive grounds of employee discipline or discharge and, a mandatory and specified procedure which the employer agrees to follow prior to any employee's termination.

*Butterfield v. Citibank of S.D.*, 437 N.W.2d 857, 859 (S.D.1989). "In short, the handbook must contain language indicating a clear intention on the employer's part to surrender its statutory power to terminate its employees at will[.]" *Id.*

The trial court found no explicit agreement by WEB to discharge employees for cause only. Nor did the court find a sufficiently detailed list of grounds for employee discharge or a specific procedure which the employer was required to follow to imply an agreement to discharge employees for cause only. We agree. Nothing in the employee handbook created a contract of employment between WEB and Nelson. Summary judgment on this issue is affirmed.

## III. CONVERSION OF NELSON'S SALARY AND BENEFITS.

■ The trial court granted summary judgment for WEB on Nelson's claim alleging that WEB converted his salary and benefits. It is our opinion that this action lies in breach of contract and not conversion. *See Clapp v. Gilt Edge Consol. Mines Co.*, 33 S.D. 123, 128–29, 144 N.W. 721, 723 (1913). No person may recover a greater amount in damages for the breach of an obligation than he could have gained by full performance on both sides absent statutory exemplary damages. SDCL 21–1–5. Nelson may not recover damages twice for the same injury simply because he pleads two legal theories—one in breach of contract and one in tort. *Greenwood Ranches, Inc. v. Skie Constr. Co.*, 629 F.2d 518, 521 (8th Cir.1980) (applying South Dakota law, and holding that the plaintiff was not entitled to a separate damage award where each cause of action was simply an alternate theory seeking relief for the same wrong); *Hoovestol v. Security State Bank*, 479 N.W.2d 854, 862 (N.D.1992) (holding that a party may not recover twice for the same injury simply because he has two legal theories). Therefore, we affirm the trial court's grant of summary judgment on the claim of conversion.

## IV. INTENTIONAL OR NEGLIGENT PUBLICATION OF STATEMENTS DEFAMING NELSON.

■ Nelson next claims that WEB caused statements to be published which injured and defamed him. WEB asserts that Nelson is a

---

1. The contract contains no provisions setting forth possible grounds for termination. The issue of whether WEB can prove just cause to dismiss Nelson remains for determination on remand.

limited purpose public figure; therefore, he must show by "clear and convincing evidence" that WEB acted with "actual malice" in order to prevail in a libel action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244, 106 S.Ct. 2505, 2508, 91 L.Ed.2d 202, 209 (1986) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686, 706 (1964)); *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), *reh'g denied*, 389 U.S. 889, 88 S.Ct. 11, 19 L.Ed.2d 197 (1967).

■ Whether a person is a public figure for purposes of a libel action is initially a question of law for the trial court. *Rosenblatt v. Baer*, 383 U.S. 75, 88, 86 S.Ct. 669, 677, 15 L.Ed.2d 597, 606 (1966); *Bufalino v. Detroit Magazine, Inc.*, 433 Mich. 766, 449 N.W.2d 410, 413 (1989). Additionally, a court may find that a person loses the status of an ordinary citizen and becomes a limited public figure for the purpose of the action in which the controversy arose. *Gertz v. Robert Welch, Inc.* 418 U.S. 323, 351, 94 S.Ct. 2997, 3013, 41 L.Ed.2d 789, 812 (1974). In *Gertz*, the Court held that an individual who voluntarily injects himself or is drawn into a particular public controversy may become a public figure for a limited range of issues. *Id.*

■ We have previously determined that WEB was not a public corporation for purposes of applying SDCL 5–19–3. *Dahme Constr. Co. v. WEB Water Dev. Ass'n*, 438 N.W.2d 550, 553 (S.D.1989) (holding that WEB is not subject to public control sufficient to require application of South Dakota's preference in public contract statute). However, that finding is not determinative of the question of whether Nelson is a limited purpose public figure for purposes of defamation.

The circuit court found that Nelson was a limited purpose public figure. It determined that WEB is a large, nonprofit corporation of great importance to many South Dakotans who are members of the corporation. It found the media has shown a continued interest in the activities of WEB and that Nelson himself authored newspaper articles about WEB. Accordingly, the court found that Nelson, by becoming involved in a public

controversy pertaining to WEB, was a limited purpose public figure.

■ A public figure may recover damages for alleged defamation only upon a showing of "actual malice." *New York Times*, 376 U.S. at 285–86, 84 S.Ct. at 729, 11 L.Ed.2d at 710. Actual malice requires a showing that the defendant actually knew that the defamatory statements were false or acted with reckless disregard of the truth. *New York Times*, 376 U.S. at 287, 84 S.Ct. at 730, 11 L.Ed.2d at 710–11. The Court has clarified the *New York Times* standard, stating:

> [A] court ruling on a motion for summary judgment must be guided by the *New York Times* "clear and convincing" evidentiary standard in determining whether a genuine issue of malice exists—that is, whether the evidence presented is such that a reasonable jury might find that actual malice had been shown with convincing clarity.

*Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514–15, 91 L.Ed.2d at 217; *See Janklow v. Viking Press*, 459 N.W.2d 415, 419 (S.D.1990) (citing *Anderson* and *New York Times*).

The trial court found the record void of proof that WEB made statements with knowledge or reckless disregard of falsity. We agree. Nelson failed to meet his burden of presenting clear and convincing evidence of malice; summary judgment is affirmed on this issue.

## V. BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING.

### A. Independent of Contract

■ We have explicitly, clearly and repeatedly declined to adopt a new cause of action in tort for breach of the implied covenant of good faith and fair dealing independent of contract. *Garrett v. BankWest*, 459 N.W.2d 833, 842 (S.D.1990); *Peterson v. Glory House of Sioux Falls*, 443 N.W.2d 653, 655 (S.D.1989); *Breen*, 433 N.W.2d at 224. Summary judgment was proper on the issue of breach of an implied covenant of good faith and fair dealing independent of contract.

## B. Within Contract

In *Garrett,* this court stated: "Every contract contains an implied covenant of good faith and fair dealing which prohibits either contracting party from preventing or injuring the other party's right to receive the agreed benefits of the contract." *Garrett,* 459 N.W.2d at 841 (citing Restatement (Second) of Contracts § 205 (1981)). We went on to say, "good faith is not a limitless duty of obligation. The implied obligation 'must arise from the language used or it must be indispensable to effectuate the intention of the parties.'" *Garrett,* N.W.2d at 841 (citing *Sessions, Inc. v. Morton,* 491 F.2d 854, 857 (9th Cir.1974)).

We have determined that a valid contract existed between WEB and Nelson. Therefore, summary judgment on the issue of breach of contractual good faith and fair dealing is reversed and this issue is remanded.

## VI. BREACH OF FIDUCIARY DUTY.

The existence of a fiduciary duty and the scope of that duty are questions of law for the court. *Garrett,* 459 N.W.2d at 839; *Erickson v. Lavielle,* 368 N.W.2d 624 (S.D. 1985); *Lalley v. Safway Steel Scaffolds, Inc.,* 364 N.W.2d 139 (S.D.1985). In *Garrett,* this court quoted the Kansas Supreme Court's characterization of a fiduciary relationship:

A fiduciary relationship imparts a position of *peculiar confidence placed by one individual in another.* A fiduciary is a person with a duty to *act primarily for the benefit of another.* A fiduciary is in a position to have and exercise, and does *have and exercise influence over another.* A fiduciary relationship implies a condition of *superiority of one of the parties over the other.* Generally, in a fiduciary relationship, the property, interest or authority of the other is *placed in the charge of the fiduciary.*

*Garrett,* 459 N.W.2d at 837 (citations omitted) (quoting *Denison State Bank v. Madeira,* 230 Kan. 684, 640 P.2d 1235, 1241 (1982)). We have stated that South Dakota law reflects "the traditional view that fiduciary duties are not inherent in normal arm's-length business relationships, and arise only when one undertakes to act primarily for

another's benefit." *Taggart v. Ford Motor Credit Co.,* 462 N.W.2d 493, 500 (S.D.1990) (citing SDCL 55–7–2(2)). We have further explained this concept:

One party cannot transform a business relationship into one which is fiduciary in nature merely by placing trust and confidence in the other party. There must be additional circumstances, or a relationship that induces the trusting party to relax the care and vigilance which he would ordinarily exercise for his own protection.

*Ainsworth v. First Bank of S.D.,* 472 N.W.2d 786, 788 (S.D.1991).

The trial court found no facts which supported Nelson's contention that a special relationship existed with WEB. In fact, the court found Nelson was more experienced at business than the individual members of the Board. Nelson failed to show he placed "peculiar confidence" in WEB or to establish WEB had a duty to act primarily for his benefit. Accordingly, summary judgment was proper on this issue.

## VII. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

This court has set forth the elements necessary to establish a prima facie case for intentional infliction of emotional distress:

(1) an act by defendant amounting to extreme and outrageous conduct;

(2) intent on the part of the defendant to cause plaintiff severe emotional distress;

(3) the defendant's conduct was the cause in-fact of plaintiff's distress;

(4) the plaintiff suffered an extreme disabling emotional response to defendant's conduct.

*Tibke v. McDougal,* 479 N.W.2d 898 (S.D. 1992) (citations omitted). The outrageous conduct giving rise to the tort must be conduct which exceeds "all bounds usually tolerated by decent society and which is of a nature especially calculated to cause, and does cause, mental distress of a very serious kind." *Tibke,* 479 N.W.2d at 907 (citations omitted). The initial determination of whether the defendant's conduct is extreme enough

to permit recovery belongs to the trial court. *Id.* (citing Restatement (Second) of Torts § 46 comment (d)).

The trial judge determined, and we agree, that Nelson's deposition and affidavit do not set forth sufficient facts to create a genuine issue of material fact for a jury. Summary judgment is affirmed on this issue.

## VIII. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.

■ In South Dakota, the tort of negligent infliction of emotional distress requires manifestation of physical symptoms. *Wright v. Coca Cola Bottling Sys.*, 414 N.W.2d 608, 609 (S.D.1987). Further, there must be some causal nexus between the distress and the physical injury. *Id. Wright* held that when a plaintiff establishes some physical injury, the degree of that injury is a question for the jury. *Wright*, 414 N.W.2d at 610.

■ In this case, Nelson admitted in his deposition that he was not physically injured by the actions of WEB. Later, in an affidavit, he described a visit to a doctor for unexplained abdominal pains. It is settled law in this jurisdiction that a party cannot claim benefit of a version of the facts more favorable to his contentions than he gave in his own sworn testimony. *Waddell v. Dewey County Bank*, 471 N.W.2d 591, 595 n. 3 (S.D.1991); *Lalley v. Safway Steel Scaffolds, Inc.*, 364 N.W.2d 139, 141 (S.D.1985).

We agree with the trial court's finding that Nelson failed to establish a genuine issue of material fact as to a causal connection between the abdominal pains and the emotional stress he suffered. Summary judgment is affirmed on this issue.

## IX. CONSPIRACY TO TERMINATE EMPLOYMENT AND BREACH THE EMPLOYMENT CONTRACT.

■ Nelson asserts there are genuine issues of material fact as to whether the individual defendants conspired to terminate Nelson and breach his employment contract. This court has previously affirmed a directed verdict for defendants in an action alleging conspiracy to expel the plaintiff from his business. *Time Out, Inc. v. Karras*, 469

N.W.2d 380, 385 (S.D.1991). In *Time Out*, we found the discussion between the alleged conspirators "evidenced little more than common business sense." Here, discussion during the election about changing management at WEB was similar—a discussion about business, not a conspiracy.

■ Once the WEB Board was constituted, the actions of the individuals became the action of the whole, of the corporate entity. "[T]here is no conspiracy if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers and employees, each acting within the scope of his [or her] employment." *Herrmann v. Moore*, 576 F.2d 453, 459 (2nd Cir.1978), *cert. denied*, 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 679 (1978) (holding that the vote of faculty and trustees discharging professor was essentially a single act by corporation). We agree with the reasoning of the Second Circuit Court of Appeals and find that the WEB Board could not commit conspiracy when acting as a corporate entity. The trial court's grant of summary judgment is affirmed on the issue of conspiracy.

## X. TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP OR EXPECTANCY.

■ Nelson further claims the trial court erred in granting summary judgment for WEB on his claim that the directors as individuals interfered in his business relationship or damaged his expectancy. In *Tibke*, we set forth the essential elements of the claim of tortious interference with business relationships or expectancy:

(1) the existence of a valid business relationship or expectancy;

(2) knowledge by the interferer of the relationship or expectancy;

(3) an intentional and unjustified act of interference on the part of the interferer;

(4) proof that the interference caused the harm sustained; and

(5) damage to the party whose relationship or expectancy was disrupted.

*Tibke,* 479 N.W.2d at 908 (citing *Miller Chem. Co., v. Tams,* 211 Neb. 837, 320 N.W.2d 759 (1982); *Nesler v. Fisher & Co.,* 452 N.W.2d 191 (Iowa 1990)). We have never before decided the question of whether a director or officer of a corporation may be liable for tortious interference of a business contract or expectancy in discharging an employee.

The trial court found the overwhelming majority of jurisdictions refuse to hold a corporation's directors, officers or employees liable for tortious interference with a corporate contract or expectancy as they are considered parties to the contract while acting to serve the corporate interests within the scope of their authority. *Nordling v. Northern States Power Co.,* 465 N.W.2d 81 (Minn. App.1991); *Bossuyt v. Osage Farmers Nat'l Bank,* 360 N.W.2d 769 (Iowa 1985); *Dzierwa v. Michigan Oil Co.,* 152 Mich.App. 281, 393 N.W.2d 610 (1986); Thomas G. Fischer, Annotation, *Liability of Corporate Director, Officer, or Employee for Tortious Interference With Corporation's Contract With Another,* 72 A.L.R. 4th 492 (1989).

In *Nordling,* the Minnesota Court of Appeals affirmed a grant of summary judgment to the defendant corporate officer on a claim of tortious interference with contract where the officer had no personal capacity to discharge an employee. "The acts of a corporate officer within the scope of his or her duties constitute the acts of the corporation, and the officer is thus shielded from personal liability for tortious interference with contract." *Nordling,* 465 N.W.2d at 86–7. In *Bossuyt,* the Supreme Court of Iowa affirmed summary judgment for a bank officer acting in his official capacity, reasoning:

> "[T]hey (defendants) had the right while acting as corporate officers and agents to counsel and advise with the defendant corporation as to the management of its affairs in all matters with which the corporation was concerned without the risk of rendering themselves personally liable to third parties for their acts in that regard if they should err. 'Any other rule would make it impossible for corporate business to be carried on at all except at the peril that every agent who advised concerning

corporate action would be suable under some such allegations as are made in this complaint.'"

*Bossuyt,* 360 N.W.2d at 779 (quoting *Rhine v. Sanders,* 100 Ga.App. 68, 110 S.E.2d 128, 132 (1959)). As the *Bossuyt* court quoted: "To hold otherwise would be dangerous doctrine, and would subject corporate officers and directors continually to liability on corporate contracts and go far toward undermining the limitation of liability which is one of the principal [sic] objects of corporations." *Bossuyt,* 360 N.W.2d at 779 (quoting *In re Brookside Mills,* 276 A.D. 357, 94 N.Y.S.2d 509, 518 (1950)).

This reasoning is consistent with South Dakota law which gives corporations the power to indemnify directors, officers, employees or agents of the corporation for corporate actions they performed while acting in good faith and not against the best interests of the corporation. SDCL 47–22–65.1 through –65.5.

■ In South Dakota, no cause of action for tortious interference with contract may be maintained against a corporate officer who, acting within the scope of his or her authority, discharges an employee. The trial court's grant of summary judgment is affirmed on this issue.

## XI. PUNITIVE DAMAGES.

■ In South Dakota, punitive damages are permitted only where authorized by statute. SDCL 21–1–4. Punitive damages are not ordinarily available in breach of contract claims. SDCL 21–3–2; *O'Neill v. Blue Cross of W. Iowa and S.D.,* 366 N.W.2d 816 (S.D. 1985); *Thu v. American Family Ins. Co.,* 292 N.W.2d 109 (S.D.1980). However, SDCL 60–11–7, which Nelson pled in his amended complaint, permits double wages to be awarded as damages if an employer's refusal to pay wages arises to the level of oppression, fraud or malice. SDCL 60–11–7 provides:

> In any action for the breach of an obligation to pay wages, where a private employer has been oppressive, fraudulent, or malicious, in his refusal to pay wages due to the employee, the measure of damages

is double the amount of wages for which the employer is liable.

Therefore, if the trial court determines on remand that WEB breached its contract with Nelson, Nelson must show WEB is guilty of oppression, fraud or malice to recover double damages. Where a statute provides for double damages, further punitive damages are not recoverable. *Jensen Ranch, Inc. v. Marsden*, 440 N.W.2d 762, 766 (S.D.1989); *K & E Land & Cattle Inc. v. Mayer*, 330 N.W.2d 529, 532 (S.D.1983). The trial court's grant of summary judgment for damages under SDCL 60–11–7 is reversed.

As we have affirmed the trial court's grant of summary judgment on all Nelson's tort claims, the court's grant of summary judgment on all tort-based punitive damages is affirmed.

HENDERSON and AMUNDSON, JJ., concur.

MILLER, C.J., and SABERS, J., concur specially.

MILLER, Chief Justice (concurring specially).

I write specially to point out that in amending the bylaws by implication, the Board of Directors was required to follow both statutory law and procedures set forth in its own articles of incorporation and by-laws. *St. John's Hosp. Medical Staff v. St. John Regional Medical Ctr., Inc.*, 90 S.D. 674, 681, 245 N.W.2d 472, 475 (1976) (holding that failure to follow specific amendment procedures rendered attempted amendment of bylaws null and void). There has been no claim that amendment of the bylaw by implication violated any statute. Article of incorporation X required at least a 66% favorable vote for the WEB Board to amend the by-laws. As only one of at least five directors necessary for a quorum voted against Nelson's employment contract, the necessary 66% favorable vote amended the bylaw by implication.*

---

* It appears from the record that a previous WEB Board also signed an employment contract for a

I question the majority's assertion that article of incorporation X, giving the Board power to amend the bylaws, and bylaw article XVI, giving similar power to WEB members, conflict. The same principles which govern the construction of contracts govern the construction and interpretation of corporate bylaws. *St. John's*, 90 S.D. at 679, 245 N.W.2d at 475. One such principle is that, whenever possible, contractual provisions will be construed harmoniously and effect given to all provisions. *GMS, Inc. v. Deadwood Social Club, Inc.*, 333 N.W.2d 442, 444 (S.D. 1983). Therefore, the two provisions should be read as providing separate means by which either the membership or the Board may amend the WEB bylaws. *See Phillips v. National Trappers Ass'n*, 407 N.W.2d 609, 612 (Iowa App.1987) (holding valid an amendment to articles of incorporation which created two methods by which members could amend bylaws).

SABERS, Justice (concurring specially).

I write specially to point out that Issue II (Employee Handbook), Issue III (Conversion of Salary), and Issue V (Breach of Covenant Within Contract), are all included within Issue I dealing with breach of employment contract. Therefore, damages arising therefrom, if any, should be included in Issue I to prevent double recovery. *Greenwood Ranches*, 629 F.2d 518; *Hoovestol*, 479 N.W.2d 854.

I write specially on Issue VII, Intentional Infliction of Emotional Distress, to point out that it includes reckless conduct resulting in emotional distress. *Petersen v. Sioux Valley Hospital Ass'n*, 491 N.W.2d 467, 469 (S.D. 1992); *Wangen v. Knudson*, 428 N.W.2d 242, 246 (S.D.1988).

specified term with a former manager.