JOHN R. GIBSON, Circuit Judge,
dissenting.
I respectfully dissent.
I believe that the court today takes a far too narrow view of South Dakota law with respect to Deere’s refusal to approve the purchasers of Midcon’s business.
I must first say that were we considering adoption of a federal rule with respect to the covenant of good faith, I would join much of the court’s. opinion today with substantial enthusiasm. The issue, however, is far more narrow; namely, a prediction of the rule that would be applied by the South Dakota Supreme Court.
The two district judges involved in tMs case demed motions for summary judgment with respect to the implied covenant of good faith issue. The first such decision was articulated in open court after considerable argument, relying on this court’s earlier decision in Cambee’s Furniture, Inc. v. Doughboy Rec., Inc., 825 F.2d 167 (8th Cir.1987), based on South Dakota law.
The second judge, in a thoughtful and detailed analysis of several South Dakota cases on the implied covenant of good faith undertaken by the court, concluded:
In tMs case, the implied covenant of good faith and fair dealing arises from the language of the assignment clause expressly stated in the written dealersMp agreements. See Nelson v. WEB Water Dev. Ass’n, Inc., 507 N.W.2d 691, 698 (S.D.1993) (reversing grant of summary judgment on issue of breach of contractual good faith *1036 and fair dealing where high court determined a valid employment contract existed). Cf. Garrett [v. BankWest, Inc.,] 459 N.W.2d [833,] 844 [ (S.D.1990) ], (holding that no implied covenant arose because no contracts existed). Although the South Dakota Supreme Court has not decided a similar case, this Court concludes, based on Nelson, Garrett and Groseth [Int'l, Inc. v. Tenneco, Inc., 410 N.W.2d 159 (S.D.1987)], that, construing the contract language used here, the South Dakota Supreme Court would impose on the franchisor a duty to act reasonably in deciding whether to consent to a proposed dealership transfer. See Larese, 767 F.2d [716,] 716-17 [ (10th Cir.1985) ].
The court continued, reasoning that there was no evidence that the assignment clause resulted from arms-length negotiation between the parties. In addition, Taylor testified in his deposition that long after the agreements were reached, Deere executive, Gene Griffith, had told Taylor “several times” that he would not be unreasonable about [approving or disapproving transfer of the dealership agreements]. The district judge stated:
[U]nder the contract language as written, the implied covenant of good faith and fair dealing is necessary as an aid to interpreting the assignment clause. Plaintiff Mid-con had a reasonable expectation that defendant would exercise good faith and fair dealing in making its decision as to whether dealership agreements could be transferred.
Later, in ruling on post-trial motions, the district judge referred to the earlier order on the motion for summary judgment and ordered that the judgment should stand. It rejected Deere’s argument that the reasons it gave for not approving Interstate as a purchaser presented questions of law rather than questions of fact. The judge, viewing the evidence in the light most favorable to the plaintiff, held there was sufficient evidence from which the jury could find that Deere’s actions were not reasonable.
The jury was instructed that the obligation of good faith and fair dealing is implied in the expressed written terms of the contract, which provided that Midcon could not transfer its dealership agreements to another dealer “without the express written consent of Deere Industrial.” The instruction continued:
The implied obligation of good faith and fair dealing required Deere Industrial to exercise good faith toward Midcon and to act fairly and reasonably when Midcon requested Deere Industrial’s permission to assign its dealership agreements in connection with the sale of Midcon to Interstate Companies.
Good faith means honesty in fact in the conduct or transaction concerned.
Subterfuges and evasions violate the obligation of good faith in performance of a contract even though the actor believes its conduct to be justified.
The jury was further instructed that Deere was entitled to exercise its business judgment, and that error in business judgment was not sufficient to establish lack of good faith and fair dealing.
The court’s opinion today first makes reference to the Garrett ease and its adoption of the implied covenant of good faith, but then proceeds to loose a volley of federal cases from other circuits and other districts holding that the implied covenant did not restrict an employer’s freedom to terminate an employee at will, or to terminate a contract. Next, the court’s opinion refers to cases dealing with the no-assignment-without-approval clauses that are based on law from states other than South Dakota.
Finally, the court considers two Seventh Circuit cases, Kham & Nate’s Shoes No. 2, Inc. v. First Bank of Whiting, 908 F.2d 1351 (7th Cir.1990), and Original Great American Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd., 970 F.2d 273, 280 (7th Cir.1992), both based upon Illinois law, that involve exercise of a contractual right to disapprove assignment of a dealer contract. From Cookie, the court reasons that the Seventh Circuit’s interpretation of Illinois law would point to liability if Deere dishonestly withheld approval of the proposed assignment, but not if the withholding of approval was simply unreasonable. It con- *1037 eludes that this interpretation is consistent with the adoption of the U.C.C. standard in Garrett v. BankWest, Inc., 459 N.W.2d 833, 841 (S.D.1990), which is “honesty in fact,” but is inconsistent with the district court’s imposition of a duty to act reasonably. Because it concludes that Midcon presented no evidence that Deere acted dishonestly when it disapproved the proposed assignment, it reverses the district court.
Notably, the court treats Garrett in a most cursory fashion, paying no heed to Garrett’s discussion of the basis of the adoption of the good faith rule, and in part coupling Garrett with reference to termination of at-will employment, which is inapposite. By failing to carefully examine the foundation on which Garrett sits, and by failing to consider other relevant South Dakota precedent, however, the court fails to focus on the central issue of the case — whether the South Dakota courts would interpret the covenant of good faith to incorporate acting reasonably.
The court today concedes that the South Dakota courts have not provided a clear answer to the issue before us. Nonetheless, there is no question but that in this diversity case we must apply the law of South Dakota, and if the issue has not been decided by its courts, our obligation is to predict the manner in which the issue will be decided.
The district court pointed to Garrett, which is the first decision that explicitly adopted the implied covenant of good faith. Garrett referred not only to the provisions of the U.C.C., § 1-203 as adopted by South Dakota,[10] but also made numerous references to the Restatement (Second) of Contracts § 205 (1981). Garrett stated:
Good faith is derived from the transaction and conduct of the parties. Its meaning varies with the context and emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party. Restatement (Second) of Contracts, [§ 205], Comment a. But good faith is not a limitless duty or obligation. The implied obligation “must arise from the language used or it must be indispensable to effectuate the intention of the parties.” Sessions, Inc. v. Morton, 491 F.2d 854, 857 (9th Cir.1974).
459 N.W.2d at 841.
In its detailed analysis of the facts, Garrett quotes:
[G]ood faith is an ‘excluder.’ It is a phrase without general meaning (or meanings) of its own and serves to exclude a wide range of heterogeneous forms of bad faith. In a particular context the phrase takes on specific meaning, but usually this is only by way of contrast with the specific form of bad faith actually or hypothetically ruled out.
Id. at 845 (quoting Robert S. Summers, Good Faith in General Contract Law and the Sales Provision of the Uniform Commercial Code, 54 Va. L.Rev. 195,201 (1968)). Garrett continues:
Professor Summers suggests some categories to identify bad faith in performance of a contract including: evasion of the spirit of the deal; abuse of power to determine compliance; and, interference with or failure to cooperate in the other party’s performance. [Summers at 201.] Restatement (Second) of Contracts, [§ 205] Comment e. And, as noted in Sessions, Inc. v. Morton, supra, the good faith must arise from the language used or be indispensable to effectuate the intention of the parties.
Id. Garrett held that, though every contract contains an implied covenant of good faith, there had been no violation of the covenant because there had been no violation of the spirit of the contract or justified expectations of the parties, and no abuse of power to determine compliance, nor failure to cooperate in the performance. Id. at 846.
Nelson v. WEB Water Dev. Ass’n, 507 N.W.2d 691, 698 (S.D.1993), is further evidence that the South Dakota Supreme Court will continue to apply the doctrine of implied good faith as it did in Garrett. Nelson di *1038 rectly quoted Garrett’s definition of the implied covenant of good faith and fair dealing and again referred specifically to the Restatement of Contracts. See 507 N.W.2d at 698. The district court referred to and relied on both Nelson and Garrett in its determination that the reasonableness of Deere’s actions is a good faith issue.
Because of the Supreme Court of South Dakota’s consistent reliance on the Restatement (Second) of Contracts, I am persuaded that the court would look further to the Restatement in ascertaining whether reasonableness falls within the definition of good faith. The lengthy definition given to good faith in Garrett was not considered to be all-inclusive. Indeed, Garrett stated that the meaning of good faith “varies with the context and emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.” Garrett, 459 N.W.2d at 841. The Restatement of Contracts phrases the duty as one of good faith and fair dealing in the performance and enforcement of the contracts. Restatement § 205 comment a, in discussing the meaning of good faith, refers to honesty in fact, but continues:
Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving “bad faith” because they violate community standards of decency, fairness or reasonableness.
Restatement (Second) of Contracts § 205 cmt. a (emphasis added).
Comment e, specifically referred to in Garrett, farther defines the obligation of good faith in the enforcement of contracts. The obligation of good faith “also extends to dealing which is candid but unfair, such as taking advantage of the necessitous circumstances of the other party to extort a modification of a contract for the sale of goods without legitimate commercial reason.” Restatement (Second) of Contracts § 205 cmt. e.
Finally, it must be observed that the court instructed the jury to consider not only whether Deere had acted fairly and reasonably with Midcon concerning permission to assign, but also that subterfuges and evasions violate the obligation of good faith. This instruction is directly supported by Comment d of the Restatement:
Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. But the obligation goes further; bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. A complete catalogue of types of bad faith is impossible, but the following types are among those which had been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party’s performance.
Restatement (Second) of Contracts § 205 cmt. d.
I believe that the district court did not err in concluding from Nelson and Garrett that their reliance on section 205 of the Restatement of Contracts would support the conclusion that reasonableness, along with subterfuges and evasions, all terms enumerated in the Restatement comments, are issues prop-: erly to be considered by the jury in determining the issue of good faith. Further, the district court’s reliance on Garrett and Nelson, and in turn the reference of those two cases to section 205 of the Restatement of Contracts, supports the district court’s reference to Larese, contrary to the extended arguments made by the court today.
While the court’s comments today concerning the ruling on Midcon’s motion in limine to preclude evidence regarding Midcon’s sales out of trust and Deere’s intended termination may be but dictum in view of its holding, just a few words are in order to explain why I believe the court also errs in this respect. Midcon’s claim was pleaded in six counts. The district court dismissed five of these counts, including that for wrongful termination, at Deere’s urging. At the hearing on this motion, Deere’s counsel argued that no cancellation of the franchise had been *1039 alleged, but only “that Deere said you should find someone else to buy your business or we will terminate. We never got to the we will terminate part, because he did, in fact, find someone else to buy his businesses.” Counsel continued to advocate that what had happened in this case was the resignation of a dealer after a buyer was found. Thus, the sole issue that was tried to the jury was the question of the implied covenant of good faith on refusal to approve the assignment. The district court explained that it excluded the evidence because it was prejudicial in light of the fact that Midcon’s wrongful termination claim had been dismissed. In denying the post-trial motion for new trial on this ground, the district court referred to this order in the pretrial motions, and stated that Deere had provided no new evidence or argument to justify a reversal of these rulings and therefore denied relief. The trial judge has wide discretion in ruling on the admissibility of evidence, and its decisions thereon will not be disturbed unless there is a clear and prejudicial abuse of discretion. Robertson Oil Co. v. Phillips Petroleum Co., 930 F.2d 1342, 1346 (8th Cir.1991), cert. denied, — U.S. —, 114 S.Ct. 2120, 128 L.Ed.2d 677 (1994). I would not conclude that the district court abused its discretion in this matter.
I would affirm the judgment of the district court because I believe it to be based firmly on South Dakota law and an accurate prediction as to how South Dakota courts would decide the issue before us.

. “Every contract or duty within this title imposes an obligation of good faith in its performance or enforcement.” S.D. Codified Laws § 57A-1-203 (1988). Good faith is defined as "honesty in fact in the conduct or transaction concerned.” S.D. Codified Laws § 57A-1-201 (1988).